Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/22/2017 08:11 PM CST

Ian T. Hintz, appellant, v. Farmers Cooperative
Association, appellee.
___ N.W.2d ___

Filed September 29, 2017.    No. S-16-267.

1. **Workers' Compensation: Appeal and Error.** Pursuant to Neb. Rev. Stat. § 48-185 (Cum. Supp. 2016), an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award.

2. ____: ____. Findings of fact made by the Workers' Compensation Court have the same force and effect as a jury verdict and will not be set aside unless clearly erroneous.

3. **Workers' Compensation: Evidence: Appeal and Error.** When testing the sufficiency of the evidence to support findings of fact made by the Workers' Compensation Court trial judge, the evidence must be considered in the light most favorable to the successful party and the successful party will have the benefit of every inference reasonably deducible from the evidence.

4. **Workers' Compensation.** The Nebraska Workers' Compensation Act provides that when an employee suffers personal injury caused by accident or occupational disease, arising out of and in the course of his or her employment, such employee shall receive compensation from his or her employer if the employee was not willfully negligent at the time of receiving such injury.

5. **Workers' Compensation: Proof.** In order to recover under the Nebraska Workers' Compensation Act, a claimant has the burden of proving by a preponderance of the evidence that an accident or occupational disease arising out of and occurring in the course of employment proximately caused an injury which resulted in disability compensable under the act.

6. **Workers' Compensation: Expert Witnesses.** If the nature and effect of a claimant's injury are not plainly apparent, then the claimant must provide expert medical testimony showing a causal connection between the injury and the claimed disability.

7. **Expert Witnesses.** Triers of fact are not required to take the opinions of experts as binding on them.

8. **Workers' Compensation: Expert Witnesses.** It is the role of the Nebraska Workers' Compensation Court as the trier of fact to determine which, if any, expert witnesses to believe.

9. **Workers' Compensation: Appeal and Error.** Where the record presents nothing more than conflicting medical testimony, an appellate court will not substitute its judgment for that of the Workers' Compensation Court.

10. **Evidence: Words and Phrases.** "Competent evidence" is defined as that which is admissible and relevant on the point in issue or, stated another way, admissible and tending to establish a fact in issue.

11. **Expert Witnesses.** When the subject matter is wholly scientific or so far removed from the usual and ordinary experience of the average man that expert knowledge is essential to the formation of an intelligent opinion, only an expert can competently give opinion evidence as to the cause of the physical condition.

12. **Trial: Witnesses.** The question as to the competency of a witness must be initially determined by the trial court.

13. ____: ____. The credibility and weight of the testimony to be given to a witness are for the trier of fact to determine.

14. **Expert Witnesses: Physicians and Surgeons.** For purposes of determining whether a medical expert's testimony is admissible, it is acceptable, in arriving at a diagnosis, for a physician to rely on examinations and tests performed by other medical practitioners.

Petition for further review from the Court of Appeals, Inbody and Pirtle, Judges, and McCormack, Retired Justice, on appeal thereto from the Workers' Compensation Court, Thomas E. Stine, Judge. Judgment of Court of Appeals reversed, and cause remanded with direction.

Thomas R. Lamb and Richard W. Tast, Jr., of Anderson, Creager & Wittstruck, P.C., L.L.O., for appellant.

Jason A. Kidd, of Engles, Ketcham, Olson & Keith, P.C., for appellee.

Heavican, C.J., Wright, Miller-Lerman, Cassel, Stacy, Kelch, and Funke, JJ.

Funke, J.

The issues in this litigation were the nature and extent of a work-related injury sustained by Ian T. Hintz, an employee of Farmers Cooperative Association (Farmers). The Nebraska Workers' Compensation Court found that Hintz' work-related injury was fully resolved within 3 days of the work accident and that Hintz' need for additional medical treatment was the result of a non-work-related injury. Upon appeal, the Nebraska Court of Appeals reversed the decision and remanded the cause with directions for the court to reconsider the claim in light of competent medical opinion of causation and considering the beneficent purpose of the Nebraska Workers' Compensation Act.[1]

We hold that there was sufficient competent evidence in the record to support the Workers' Compensation Court's determination that Hintz' work-related injury was fully resolved prior to his fall on December 4, 2014. Therefore, we reverse the holding of the Court of Appeals.

### BACKGROUND

On Thursday, November 13, 2014, Hintz was employed by Farmers as a tire technician and was repairing a semitrailer tire, when the tire exploded. At the time of the explosion, Hintz was kneeling directly in front of the tire. As a result of the explosion, Hintz was thrown approximately 10 feet and landed on his back. He could not feel his legs, had pain in his groin and hips, and heard "a whistling" in his ears. Within a few minutes, Hintz was able to get up and walk, but he had limited use of his right leg.

Due to the pain Hintz was experiencing, he left work immediately after the explosion and did not return until the

---

[1] *Hintz v. Farmers Co-op. Assn.*, 24 Neb. App. 561, 891 N.W.2d 716 (2017).

following Monday. However, Hintz did not seek medical care for his injuries in the days immediately following the incident. Hintz indicated that upon returning to work, he was able to work only "a little" at that time.

To the contrary, Farmers offered evidence which suggested that in the days and weeks after Hintz returned to work, he was able to complete all of his job requirements. Such evidence included Hintz' payroll records and the testimony of his coworkers that Hintz resumed his normal job duties without any notable problems.

On December 4, 2014, while walking up a set of stairs at home, Hintz tripped and fell, hitting his hip. Hintz sought medical treatment the next day with Dr. James Gallentine, an orthopedic doctor. Hintz told Gallentine that he was suffering from pain in his right leg which began the night before, when he tripped on his stairs and hit his right hip and knee. Hintz also told Gallentine about the November 13 incident at work; however, he said that since that incident, he had returned to work and "was jumping on and off trucks without any difficulty." Based upon his evaluation, Gallentine prescribed pain medication for Hintz and told him not to return to work for a few days.

The pain in Hintz' right hip and leg did not resolve, and as a result, Gallentine ordered an MRI, which revealed that Hintz was suffering from a "superior labral tear and also some irregularity in the posterior labrum with a possible paralabral cyst forming." Gallentine referred Hintz to Dr. Justin Harris, an orthopedic doctor, "for a possible hip arthroscopy" and directed Hintz to remain off work until further notice. Hintz then completed an application for short-term disability benefits from Farmers. On the application, Hintz indicated that he was temporarily, totally disabled and that his condition was not related to his occupation.

On December 30, 2014, Harris examined Hintz. In his examination notes, Harris indicated that Hintz had been experiencing pain in his right hip since December 4, when he

"tripped going up stairs." Harris' notes did not mention the November 13 work incident.

On February 25, 2015, Harris performed surgery on Hintz to repair the injuries to his hip. The surgical procedures performed included a right hip arthroscopy and labral repair. Harris directed Hintz to remain off work until at least his next scheduled appointment, 6 weeks postsurgery.

After the surgery, Hintz participated in physical therapy. He continued to complain of pain in his right hip and leg and, as a result, was prescribed pain medication. Hintz did not report any notable improvements to his condition.

Farmers terminated Hintz in March 2015 because he had not been to work since December 4, 2014. Within days of being fired, Hintz attended an appointment with Harris, at which time he told Harris that his hip injury was caused by a "tire [blowing] up on him two weeks prior to . . . seeking medical care."

On April 21, 2015, Hintz filed his petition with the Workers' Compensation Court, in which he alleged that he had sustained personal injury in an accident arising out of and in the course of his employment on or about November 13, 2014, and that as a result, he was entitled to disability benefits.

On May 7, 2015, Farmers answered Hintz' petition, denying most of Hintz' assertions. In addition, Farmers affirmatively alleged that any injury or disability Hintz was suffering from was not caused by a "work-related accident."

On May 18, 2015, Harris authored a letter to Hintz' counsel, discussing Hintz' injury to his right hip and the cause of that injury. Harris stated:

I understand that causation is an issue in this case. When the patient initially presented to me on December 30, 2014, the history that was entered into our notes states that the patient had tripped up his stairs on December 4 . . . . The work injury was not documented at that time.

. . . .

As I have had the opportunity to discuss the case with [Hintz] since our initial visit, he makes it very clear to me that his symptoms all started with his work injury and that he was basically trying to deal with these on his own in order to keep working until the symptoms became unrelenting in December.

Unfortunately, the documentation that we have in our notes does not necessarily corroborate what [Hintz] is currently stating. It should be noted, however, that the labral tear that we found at surgery was relatively severe and the mechanism of injury seems much more likely to be a high energy work injury as opposed to simply falling up the steps in order to create this type of labral tear.

On that same day, Gallentine also authored a letter to Hintz' counsel, discussing the cause of Hintz' injury. Gallentine stated:

It is very difficult to specifically assign causation to one event versus the other in the case of . . . Hintz. An individual could certainly have hip related pain and labral pathology from the injury as reported at work on the 13th of November. He also could have similar findings from a fall as he noted having on December 5 [sic], 2014. I do not know that there is any reasonable degree of medical certainty that would specifically assign his injury to one event versus the other. I would certainly be willing to defer to . . . Harris' opinion as he did perform a hip arthroscopy on . . . Hintz and would have had a more direct evaluation of the actual intraarticular pathology noted at that time and whether this could be assigned more directly to one event or the other.

Dr. Dennis Bozarth, an orthopedic doctor, reviewed Hintz' medical records at the request of Farmers' counsel and, on June 8, 2015, authored a letter concerning the cause of Hintz' injury. In the letter, Bozarth states that although he "can't say to a reasonable degree of medical certainty that the work

event on November 13, 2014 had any factor in [Hintz'] complaints of right hip pain," he believes that "more likely than not, [Hintz' hip injury] is related to a trip and fall at home." Bozarth concluded:

> Therefore after review of the available medical records, more likely than not, my opinion is that . . . Hintz did have an accident at work where a tire did blow up, injuring his left lower extremity. This did resolve, and he was working without restrictions. A new incident occurred on November 25 [sic], 2014, causing his right hip to become symptomatic.

After a hearing on Hintz' petition for disability benefits, the compensation court entered an order denying Hintz any workers' compensation benefits. The court noted that both parties agreed that Hintz had a work accident on November 13, 2014. However, the court found that any injury Hintz suffered as a result of the work accident was resolved within 3 days. It further found that Hintz' right hip injury which required surgery was the result of a fall on his stairs at home and not the work accident. Hintz appealed.

The Court of Appeals concluded that the trial court erred in finding that there was no medical evidence to support Hintz' contention that his injury was caused by the tire explosion at Farmers, and as a result, the Court of Appeals reversed the decision of the compensation court and remanded the cause with directions for the court to reconsider the claim in light of competent medical opinion of causation. The appellate court concluded that the finding by the compensation court—wherein the court rejected Harris' opinions because they were "based on an inconsistent history given by [Hintz] and, therefore, [his] opinions lack a credible foundation"—was clearly wrong.

Specifically, the appellate court determined that Harris' opinion was based upon his personal observations of the injury during surgery. The court also noted that Gallentine deferred to Harris' opinion, because Harris performed the surgery.

The Court of Appeals further determined that Bozarth's opinion was not based on any medical conclusions, but merely the review of Hintz' medical records. Thus, the court concluded that Bozarth's opinion did not constitute competent medical testimony.

## ASSIGNMENTS OF ERROR

Hintz did not specifically assign errors in his brief before the Court of Appeals, but argued that the compensation court erred (1) in finding that there was not a causal relationship between his injuries and the November 13, 2014, incident at Farmers and (2) in finding that he was not entitled to any disability benefits.

In its petition for further review, Farmers assigns that the Court of Appeals erred (1) by misapplying the clear error standard of review, in that it did not weigh the evidence in the light most favorable to the successful party and substituted its judgment for that of the trial court; (2) by holding that the opinion of Farmer's expert witness, Bozarth, was "'not competent medical testimony'"; (3) by applying the rule of liberal construction of the Nebraska Workers' Compensation Act to evidence; and (4) in considering Hintz' appeal, given Hintz' failure to specifically assign any errors within his brief.

## STANDARD OF REVIEW

[1] Pursuant to Neb. Rev. Stat. § 48-185 (Cum. Supp. 2016), an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award.[2]

---

[2] *Nichols v. Fairway Bldg. Prods.*, 294 Neb. 657, 884 N.W.2d 124 (2016).

[2,3] Findings of fact made by the Workers' Compensation Court have the same force and effect as a jury verdict and will not be set aside unless clearly erroneous.[3] When testing the sufficiency of the evidence to support findings of fact made by the Workers' Compensation Court trial judge, the evidence must be considered in the light most favorable to the successful party and the successful party will have the benefit of every inference reasonably deducible from the evidence.[4]

## ANALYSIS

This case involves two contradictory factual scenarios: (1) whether Hintz fully recovered from the workplace accident and was then reinjured at home or (2) whether Hintz continued to experience pain from the accident and was then reinjured as a result.

[4] The Nebraska Workers' Compensation Act provides that when an employee suffers personal injury caused by accident or occupational disease, arising out of and in the course of his or her employment, such employee shall receive compensation from his or her employer if the employee was not willfully negligent at the time of receiving such injury.[5]

[5] In order to recover under the Nebraska Workers' Compensation Act, a claimant has the burden of proving by a preponderance of the evidence that an accident or occupational disease arising out of and occurring in the course of employment proximately caused an injury which resulted in disability compensable under the act.[6]

[6-8] If the nature and effect of a claimant's injury are not plainly apparent, then the claimant must provide expert medical testimony showing a causal connection between the injury

---

[3] See *Hull v. Aetna Ins. Co.*, 247 Neb. 713, 529 N.W.2d 783 (1995).

[4] *Nichols, supra* note 2.

[5] Neb. Rev. Stat. § 48-101 (Reissue 2010).

[6] *Hynes v. Good Samaritan Hosp.*, 291 Neb. 757, 869 N.W.2d 78 (2015).

and the claimed disability.[7] The rule in this jurisdiction is that triers of fact are not required to take the opinions of experts as binding on them.[8] It is the role of the Nebraska Workers' Compensation Court as the trier of fact to determine which, if any, expert witnesses to believe.[9]

### Sufficiency of Evidence

Here, the compensation court considered the expert medical opinions of three orthopedic doctors and noted that there was conflicting medical evidence presented concerning the nature and extent of Hintz' injuries. Harris opined that Hintz' labral tear which was found at surgery was relatively severe and that the mechanism of injury seemed much more likely to be a "high energy work injury" as opposed to simply falling on the stairs; Bozarth opined that more likely than not, Hintz' work accident injuring his left lower extremity fully resolved prior to his fall at home and that his fall at home caused his right hip to become symptomatic; and Gallentine opined that Hintz could have suffered his hip injury from either the work-related incident or the fall at home.

The compensation court rejected Harris' opinion, finding it not credible that Hintz could have returned to work full duty for several weeks with such a severe tear. Noting that "[t]he value of an expert witness' opinion is no stronger than the facts upon which it is based," the trial court rejected Harris' testimony as lacking a "credible foundation," because it was premised upon an "inconsistent history."

[9] Where the record presents nothing more than conflicting medical testimony, this court will not substitute its judgment for that of the Workers' Compensation Court.[10]

---

[7] *Owen v. American Hydraulics*, 258 Neb. 881, 606 N.W.2d 470 (2000).

[8] *Hamer v. Henry*, 215 Neb. 805, 341 N.W.2d 322 (1983).

[9] *Owen, supra* note 7.

[10] *Nichols, supra* note 2.

The evidence also showed that Hintz sought no medical treatment after the first injury, but immediately sought medical treatment after the second injury. Further, upon seeking that medical treatment, he repeatedly told his medical care providers that his injury was the result of falling on the stairs. When asked whether the injury was work related, he repeatedly said it was not. Only after Hintz was terminated from his employment did he begin stating that the injury was the result of the tire exploding.

The compensation court found the evidence that Hintz had returned to full-duty work and was experiencing no pain from the accident was more credible than Hintz' version that he continued to experience pain from the accident, which pain first surfaced weeks later.

Although the version of facts found by the compensation court must be accepted on appeal, the Court of Appeals appears to have reweighed the evidence by focusing on the opinion of Harris and rejecting the opinion of Bozarth. Further, the Court of Appeals reweighed the evidence as to the inconsistent statements made by Hintz to both of his doctors, the testimony of his coworkers, and the payroll records.

Since there was competent testimony to support the determination that Hintz' work-related injury fully resolved before the injury he sustained at home, the decision of the compensation court was not clearly erroneous, and therefore, the holding of the Court of Appeals is reversed.

### EFFECT OF RECORDS REVIEW

The Court of Appeals also determined that Bozarth's opinion was not based on any medical conclusions, but merely the review of Hintz' medical records. As a result, the court concluded that his opinion did not constitute competent medical testimony.

In doing so, the appellate court stated that "[t]he sufficiency of an expert's opinion is judged in the context of the expert's entire statement" and that "the value of an expert witness'

opinion is no stronger than the facts upon which it is based"[11]—two contentions with which we agree. However, the Court of Appeals went on to state that "[b]ecause . . . Bozarth's opinion is not based on any medical conclusions, we conclude that his opinion does not constitute competent medical testimony."[12] With this contention we cannot agree.

[10,11] We have defined "competent evidence" to be that which is admissible and relevant on the point in issue or, stated another way, admissible and tending to establish a fact in issue.[13] When the subject matter is wholly scientific or so far removed from the usual and ordinary experience of the average man that expert knowledge is essential to the formation of an intelligent opinion, only an expert can competently give opinion evidence as to the cause of the physical condition.[14]

[12,13] The question as to the competency of a witness must be initially determined by the trial court.[15] However, the credibility and weight of the testimony to be given to a witness are for the trier of fact to determine.[16]

[14] The Court of Appeals misstated our prior jurisprudence when it concluded that Bozarth's expert medical opinion was not competent because he merely reviewed Hintz' medical records. To the contrary, we have routinely held that for purposes of determining whether a medical expert's testimony is admissible, it is acceptable, in arriving at a diagnosis, for a physician to rely on examinations and tests performed by other medical practitioners.[17]

---

[11] *Hintz, supra* note 1, 24 Neb. App. at 570, 891 N.W.2d at 723.

[12] *Id.*

[13] See *Mathes v. City of Omaha*, 254 Neb. 269, 576 N.W.2d 181 (1998).

[14] *Hohnstein v. W.C. Frank*, 237 Neb. 974, 468 N.W.2d 597 (1991).

[15] See *State v. Earl*, 252 Neb. 127, 560 N.W.2d 491 (1997).

[16] See *Nichols, supra* note 2.

[17] *Hynes, supra* note 6.

In the instant case, the Workers' Compensation Court appropriately received into evidence the opinions of both Harris and Bozarth as competent medical evidence. The court then correctly considered the conflicting opinions and made a determination as to the weight and credibility to be given each of the opinions. As a result, we disapprove of the Court of Appeals' determination that Bozarth's opinion was not competent.

## CONCLUSION

In the case at bar, the facts were in dispute as to whether Hintz fully recovered from the workplace accident and was then reinjured at home or whether Hintz continued to experience pain from the accident and was then reinjured as a result. The extent of Hintz' injuries was a question of fact to be determined by the trier of fact. The Workers' Compensation Court was not clearly wrong in finding that Hintz did not meet his burden of proving that his subsequent injury was the result of his workplace accident. We reverse the holding of the Court of Appeals and remand the cause to the Court of Appeals with direction to affirm the decision of the Workers' Compensation Court.

Reversed and remanded with direction.