IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

BOLITA V. WEST OMAHA WINSUPPLY CO.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

JEFF D. BOLITA, APPELLEE,

V.

WEST OMAHA WINSUPPLY COMPANY, APPELLANT.

Filed March 20, 2018.    No. A-17-636.

Appeal from the Workers' Compensation Court: DANIEL R. FRIDRICH, Judge. Affirmed.

Lyndsey A. Canning, of Law Office of Patrick J. Sodoro, for appellant.

Jeffrey F. Putnam, of Law Offices of Jeffrey F. Putnam, P.C., L.L.O., for appellee.

MOORE, Chief Judge, and PIRTLE and ARTERBURN, Judges.

MOORE, Chief Judge.

## I. INTRODUCTION

West Omaha Winsupply Company (Winsupply) appeals the decision of the Nebraska Workers' Compensation Court, finding Jeffrey D. Bolita suffered an accident and resulting injury to his bilateral Achilles tendons arising out of and in the course of his employment with the company. The court awarded Bolita temporary total disability benefits, together with certain past and future expenses related to his treatment. For the reasons that follow, we affirm.

## II. BACKGROUND

Bolita filed a petition on December 22, 2016, alleging that on September 8, he sustained injuries to his bilateral Achilles tendons arising out of and in the course of his employment with Winsupply. Bolita further alleged that these injuries required him to stop working and seek medical care.

The compensation court held trial on May 4, 2017. Bolita testified and offered medical records and notes from various treatment centers, a letter from his physician, a summary of his medical expenses attached to his medical receipts, and a mileage reimbursement summary attached to records of his travels to and from his various medical appointments.

Bolita was a member of the Marine Corps from July 1990 until 1994 when he left to work as a civilian. While working at a California ranch in September of 1995, Bolita fell from the top of a haystack, shattering his right ankle and breaking his right wrist. After doctors treated his injuries in California, he moved back to Nebraska. Soon thereafter, Bolita saw Dr. Timothy C. Fitzgibbons for "post fixation" treatment. Fitzgibbons performed surgery on Bolita's ankle in April of 1996. Bolita recovered so well from the surgery that he was able to re-enlist in the Marines as a reservist in 2000.

Bolita began working for Winsupply in September of 2015 as a delivery driver. In that role, he loaded trucks with plumbing supplies, drove to delivery sites, and unloaded the trucks. The materials he delivered included cast iron pipe, copper pipe, galvanized pipe, water heaters, water coolers, and any other plumbing supply item. If the item was too heavy to carry, the delivery drivers used a two-wheel dolly to move it. Bolita indicated his employment with Winsupply was physically strenuous. He frequently worked overtime and testified that he averaged between 20 and 25 deliveries each day.

Bolita began experiencing pain in his feet or Achilles tendons in the summer of 2016. The pain gradually grew more intense. On September 8, the pain grew so severe that Bolita told his supervisor he needed to stop working and see a doctor. Bolita initially went to an urgent care facility where a physician's assistant (PA) examined him. The PA noted tenderness in the bilateral Achilles tendons, gave Bolita a prescription for prednisone, and advised him to apply ice and elevate his legs. Bolita scheduled an appointment with Fitzgibbons, an orthopedic specialist, for September 12. The PA signed a note indicating Bolita could return to work with no lifting, kneeling, squatting, jumping, running, or climbing ladders until his follow up with Fitzgibbons.

Bolita saw Fitzgibbons on September 12, 2016. Bolita provided a history, including a description of his work with Winsupply that required him to carry heavy objects up steps. Bolita indicated that he began to have difficulty with this work approximately 3 months prior to his visit. Fitzgibbons took x rays that showed some soft tissue swelling in the region of the Achilles tendon of both legs. Fitzgibbons noted that the comminuted intra-articular fracture of the calcaneus that he treated with surgery in 1996 is "now doing well." Fitzgibbons's "impression" was "[r]ecent development of bilateral Achilles tendon peritenonitis versus tendinosis." He noted that

> [r]ight now, in terms of the cause of the patient's symptoms, the most significant activity in his life is his walking every day while working. He has to carry heavy objects up and down steps and I would have to feel that this is most likely the cause of his Achilles tendon issues.

Fitzgibbons initially prescribed nitroglycerin patches to wear over the Achilles tendon and placed Bolita in heel wedges. Fitzgibbons ordered an MRI of the left ankle, revealing "moderate to severe Achilles tendinosis with focal, small intratendinous lesion." Fitzgibbons prepared a work status report indicating that Bolita may return to sedentary work only, with no lifting, pushing, or pulling.

Fitzgibbons reviewed the results of the MRI when Bolita returned to him on September 22, 2016. Fitzgibbons indicated in his notes that Bolita's right side would yield the same results as his left and that his Achilles tendinosis problem is not related to his old calcaneal fracture and subtalar fusion. His notes also reaffirmed that Bolita's employment with Winsupply caused the injury. Because Bolita told Fitzgibbons that nitroglycerin patches did not help, he directed Bolita to use a "CAM" walker on his right side. If the CAM helped, he instructed Bolita to alternate between his left and right sides. Fitzgibbons also prescribed medication and physical therapy. In his work restrictions note, Fitzgibbons stated that Bolita may return to sedentary work only, with no climbing stairs or ladders, that he must wear his boot, and that he may lift up to 20 pounds.

After Bolita informed his supervisor at Winsupply of his restrictions, he answered phones for the company until it terminated his employment on approximately September 16. Bolita has not returned to work for Winsupply since then. Bolita indicated that neither the physical therapy nor the CAM boot alleviated his pain. He discontinued physical therapy after 4 or 5 weeks. He followed up with Fitzgibbons in January of 2017, but has not seen him since. At the January 9 office visit, Fitzgibbons noted that Bolita continues to have discomfort when he is on his feet for more than a few hours. Upon physical examination, Fitzgibbons indicated there is "no question" that Bolita has thickening around his Achilles tendon. Fitzgibbons reaffirmed, based on a reasonable degree of medical certainty, that the cause of Bolita's symptoms was walking and carrying heavy objects up and down steps while he worked.

In his March 21, 2017, letter to Bolita's attorney, Fitzgibbons stated that, based on a reasonable degree of medical certainty, he felt the most likely cause of Bolita's Achilles tendon issues was his employment, which required him to climb, walk, and stand. Fitzgibbons explained that because nonsurgical treatment was unsuccessful, he and Bolita discussed surgical options.

Bolita testified about his outside activities during the summer of 2016 when he took a trip with the Boy Scouts to Medicine Mountain, South Dakota. Although the trip involved some hiking, it did not require any out of the ordinary physical activity. Bolita also canoed at a lake with the Boy Scouts in August and used a Dutch oven to cook over an open fire at a Boy Scout campout in November. Bolita testified that neither the canoe outing nor the campout required physical activity and that he abided by the restrictions that Fitzgibbons gave him. Bolita also testified that he is an avid hunter. During the 2015-16 season, he hunted 13 or 14 times. But in the 2016-17 season, he hunted only once. Approximately 3 weeks before trial, Bolita found work at a breeding stable that allowed him to comply with Fitzgibbons work restrictions.

Christina Klassen testified for Bolita. Klassen knew Bolita through his involvement with the Boy Scouts. Bolita is an assistant scout master, and her son is a Boy Scout. As a result, she has known Bolita for about 2 years. Klassen observed in 2016 that Bolita walked tenderly and occasionally used crutches. She also testified that he was unable to attend a canoe trip in September.

On November 10, 2016, Winsupply's independent medical examiner, Dr. Michael J. Morrison, examined Bolita. Morrison's "impression" was that bilateral heel cord tendinitis with secondary thickening caused Bolita's pain. To determine whether Bolita's job duties and repetitive activity at work contributed to the heel cord tendinitis, Morrison asked to obtain a job description of his duties at Winsupply. In a December 19 addendum to his original letter, Morrison noted he had received a follow-up letter and worksheet from Winsupply's counsel. Based on the worksheet

that showed Bolita is required to drive a truck 6 hours each day, Morrison found his employment with Winsupply could have contributed to repetitive activity to the right ankle and to his heel cord tendinitis. Morrison noted that from the worksheet, he was unable to make specific findings that explain repetitive activity to Bolita's left ankle or why he developed bilateral heel cord tendinitis. Morrison further stated, "Also, to address your specific question, I am sure that he also performs driving activity outside of work in addition to his work duties as explained on the worksheet." Winsupply did not offer into evidence the followup letter and worksheet upon which Morrison relied. In a March 24, 2017, addendum, Morrison concluded that because he received no record of further treatment, he assumed that Bolita's condition had improved with conservative treatment, and therefore, Bolita achieved maximum medical improvement and would have no long term impairment.

Following the trial, the compensation court entered an award of benefits to Bolita on May 24, 2017. In its award, the court found that on September 8, 2016, Bolita suffered an accident and resulting injury to his bilateral Achilles tendons arising out of and in the course of his employment with Winsupply. The court determined that he is entitled to temporary total disability from September 16, 2016, through and including April 19, 2017, at a rate of $431.33 per week. The court also found Winsupply liable for the medical bills and mileage reimbursement that Bolita provided to the court, with the exception of bills relating to a November 7, 2016, office visit. Further, the court found Winsupply liable for the expenses associated with Bolita's future medical care for his bilateral Achilles tendon injuries. Winsupply appeals.

## III. ASSIGNMENTS OF ERROR

Winsupply assigns, restated, that the court erred in (1) determining that Bolita's injury was an "accident" arising out of and in the course of his employment with Winsupply and (2) determining that the opinion of Fitzgibbons was sufficient competent evidence to support the award.

## IV. STANDARD OF REVIEW

Pursuant to Neb. Rev. Stat. § 48-185 (Cum. Supp. 2016), an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Moyers v. Internationl Paper Co.*, 25 Neb. App. 282, 905 N.W.2d 87 (2017).

Findings of fact made by the Workers' Compensation Court have the same force and effect as a jury verdict and will not be set aside unless clearly erroneous. *Hintz v. Farmers Co-op Assn.*, 297 Neb. 903, 902 N.W.2d 131 (2017). When testing the sufficiency of the evidence to support findings of fact made by the Workers' Compensation Court trial judge, the evidence must be considered in the light most favorable to the successful party and the successful party will have the benefit of every inference reasonably deducible from the evidence. *Id.*

## V. ANALYSIS

### 1. ACCIDENT ARISING OUT OF AND IN COURSE OF EMPLOYMENT

Winsupply assigns that the court erred in determining that Bolita's injury was an "accident" arising out of and in the course of his employment with Winsupply. A worker may recover under Nebraska's workers' compensation laws only for injuries caused by an accident or occupational disease. See Neb. Rev. Stat. § 48-101 (Reissue 2010). The definition of "accident," as used in § 48-101, includes injuries resulting from activities that create a series of repeated traumas ultimately producing disability. *Hadfield v. Nebraska Med. Ctr.*, 21 Neb. App. 20, 838 N.W.2d 310 (2013). The identifiable point in time at which a repetitive trauma injury manifests is when there is a sudden result, characterized by an employee's discontinuing employment and seeking medical treatment, or when there is a sudden cause. *Potter v. McCulla*, 288 Neb. 741, 851 N.W.2d 94 (2014).

Under the Workers' Compensation Act's definition of accident, an injured worker must satisfy three elements to prove an injury is the result of an accident: (1) the injury must be unexpected or unforeseen, (2) the accident must happen suddenly and violently, and (3) the accident must produce at the time objective symptoms of injury. *Risor v. Nebraska Boiler*, 277 Neb. 679, 765 N.W.2d 170 (2009). Winsupply concedes that Bolita has sustained a sudden and violent injury. Brief for appellant at 9. Therefore, the only issues left to examine regarding Winsupply's challenge of Bolita's injury as an "accident" are whether the injury was unexpected or unforeseen and whether the injury produced objective symptoms at the time of the injury.

### (a) Unexpected or Unforeseen

Winsupply argues that Bolita's injury was not "unexpected or unforeseen." The unexpected or unforeseen requirement is satisfied if either the cause was of an accidental character or the effect was unexpected or unforeseen. *Owen v. American Hydraulics*, 258 Neb. 881, 606 N.W.2d 470 (2000). In *Owen*, the Nebraska Supreme Court affirmed the trial court's finding that a worker suffered cumulative trauma injuries to his arms and hands on both sides as a result of an accident arising out of and in the course of his employment. The worker was a welder who performed repetitive welding on heavy steel railroad coupling devices over the course of 8 years. The worker gradually experienced increasing pain in his hands and arms in the year prior to the injury, but he received no definitive diagnosis and continued to perform his duties until the date of the injury. With regard to the element of the definition of accident that the injuries were "unexpected and unforeseen," the Court noted that there was no evidence that the worker knew, prior to the date of his injury, that the repetitive tasks he performed as a welder could cause the injuries with which he was subsequently diagnosed.

Here, as in *Owen*, there is no evidence Bolita knew that carrying heavy plumbing equipment, at times using stairs, would cause the injury to his Achilles tendons. Bolita began working for Winsupply in September of 2015. He did not notice any pain in his feet or legs until June or July of 2016. Bolita spoke to his supervisor about the pain after some self-treatment. Bolita continued to work, but the pain gradually increased. On September 8, 2016, the injury finally caused Bolita to seek medical treatment. Bolita's work with Winsupply caused the kind of

repetitive trauma that the Nebraska Court has found to be compensable under § 48-101 as an injury caused by an accident. See *Owen, supra*. See, also, *Hadfield, supra*.

Winsupply argues Bolita's injury was not "unexpected or unforeseen" because he sustained a previous injury to his ankle. But Winsupply did not offer any evidence to relate Bolita's 1995 ankle injury to the bilateral Achilles tendon issues for which he now seeks compensation. Fitzgibbons treated Bolita's ankle 20 years ago and examined his present injury. He remarked that Bolita recovered well from surgery on the 1995 injury and that he provided Bolita with the necessary approval for him to re-enlist in the Marine Corp. Fitzgibbons examined the present injury, concluding that Bolita's employment was the most likely cause of his injury. And he specifically found that Bolita's Achilles tendon issues were not related to his calcaneal fracture.

Winsupply further argues that Bolita's injury was not "unexpected or unforeseen" because he lives an active lifestyle that foreseeably could have caused his injury. But the record shows that Bolita reduced his physical activity during the summer of 2016 as the pain in his legs increased. And, as the trial court found, none of Bolita's personal activities were as strenuous as his at Winsupply.

As noted above, Fitzgibbons opined that the most likely cause of Bolita's Achilles tendon issues was his employment, which required him to walk every day and "carry heavy objects up and down steps." Morrison's addendum report did not address the walking, carrying heaving objects, or stair climbing that Bolita's employment with Winsupply required. Rather, Morrison only noted the driving set forth in the worksheet Winsupply provided him, indicating that the driving could contribute to repetitive trauma to Bolita's right ankle and to his heel cord tendinitis. This report, particularly without the benefit of the worksheet on which Morrison relied, does little, if anything, to rebut the Fitzgibbons opinion regarding causation. Further, the compensation court found Fitzgibbons' evaluation to be persuasive because he performed it before Bolita instigated this litigation. Thus, we conclude that the compensation court's finding that Bolita's injury was "unexpected or unforeseen" was not clearly erroneous.

### (b) Objective Symptoms

Winsupply argues Bolita has failed to prove that the injury to his Achilles tendon produced objective symptoms. Winsupply insists that Fitzgibbons did not provide evidence as to how a specific activity caused Bolita's injuries. We disagree.

An accident in a workers' compensation case produces objective symptoms when the symptoms manifest themselves according to the natural course of such things without any independent intervening cause. *Owen v. American Hydraulics*, 258 Neb. 881, 606 N.W.2d 470 (2000). A court may find an injury has objective symptoms where the nature and effect of injury are plainly apparent or there is expert testimony showing causal connection between injury and claimed disability. *Catlin v. Prairie Marketing*, 239 Neb. 363, 476 N.W.2d 234 (1991).

Fitzgibbons diagnosed Bolita's bilateral Achilles tendon injuries through his medical examination as well as through x rays and an MRI. There was clearly sufficient evidence to show that Bolita's injuries produced objective symptoms. Further, Fitzgibbons' testimony showed the causal connection between the injury and the claimed disability. Fitzgibbons specifically stated, within a reasonable degree of medical certainty, that Bolita's work activity was the most likely

cause of his Achilles tendon issues. As a result, we find the compensation court's finding that Bolita's injury manifested objective symptoms was not clearly erroneous.

## 2. SUFFICIENT COMPETENT EVIDENCE

Next, Winsupply assigns that the compensation court erred in finding that Fitzgibbons' opinion was sufficient to establish causation under the Nebraska Workers' Compensation Act. Winsupply argues that Fitzgibbons' statement about Bolita's walking and carrying heavy objects is insufficient to establish a causal connection between Bolita's injury, his employment, and his disability. For the reasons set forth below, we disagree.

To recover workers' compensation benefits, an injured worker must prove by competent medical testimony a causal connection between the alleged injury, the employment, and the disability. *Contreras v. T.O. Haas*, 22 Neb. App. 276, 852 N.W.2d 339 (2014). If the nature and effect of a workers' compensation claimant's injury are not plainly apparent, then the claimant must provide expert medical testimony showing a causal connection between the injury and the claimed disability. *Hintz v. Farmers Co-op Assn.*, 297 Neb. 903, 902 N.W.2d 131 (2017). Although expert medical testimony in workers' compensation cases must be based on a "reasonable degree of medical certainty" or "reasonable probability," the testimony need not be couched in those exact, magic words. *Contreras, supra*.

Bolita provided Fitzgibbons' medical notes and an evaluation letter. Before Bolita filed this action, Fitzgibbons identified Bolita's bilateral Achilles tendon issues and determined that Bolita's work activities caused them. At a later visit, Fitzgibbons explained that Bolita's current issues are unrelated to his 1995 calcaneal fracture and subtalar fusion. In his letter to Bolita's counsel, he concluded that, based on a reasonable degree of medical certainty, the most likely cause of his Achilles tendon issues was his activities at work. Fitzgibbons specifically noted Bolita's work activities of walking, carrying heavy objects, and using stairs.

Winsupply argues that Bolita's admission to hiking, carrying firewood, hunting, and canoeing shows that other activities could have caused his injuries. But Bolita's testimony demonstrates that those activities were neither as rigorous nor as frequent as his responsibilities with Winsupply. Further, he did not experience pain related to the present injury until June or July of 2016, after hunting season was over. And although Bolita participated in Boy Scout events during the summer of 2016, Bolita's testimony shows that these events required far less physical exertion than his responsibilities with Winsupply.

Viewing the evidence in a light most favorable to Bolita, we cannot conclude that the compensation court was clearly erroneous in finding Fitzgibbons' evaluation was sufficient evidence to establish Bolita's employment caused his injuries.

## VI. CONCLUSION

The compensation court did not err in determining that Bolita's injury was an "accident" arising out of and in the course of his employment with Winsupply. Similarly, the compensation court did not err in finding that Fitzgibbons' opinion was sufficient to establish causation under the Nebraska Workers' Compensation Act.

AFFIRMED.