IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


ROBINSON V. METRO AREA TRANSIT


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


MARCUS ROBINSON, APPELLANT,

V.

METRO AREA TRANSIT, APPELLEE.


Filed May 11, 2021.    No. A-20-797.


Appeal from the Workers' Compensation Court: JOHN R. HOFFERT, Judge. Affirmed.

Michaela Skogerboe and James E. Harris, of Harris & Associates, P.C., L.L.O., for appellant.

Samuel R. O'Neill and Julie M. Ryan, of Abrahams, Kaslow & Cassman, L.L.P., for appellee.


RIEDMANN, ARTERBURN, and WELCH, Judges.

RIEDMANN, Judge.

## INTRODUCTION

Marcus Robinson appeals the decision of the Nebraska Workers' Compensation Court denying an award of benefits from Metro Area Transit (Metro). We affirm the compensation court's decision.

## BACKGROUND

*June 28, 2017, Incident.*

Robinson began working full time at Metro as a bus operator in approximately April 2014. His main duty was to drive a bus for Metro, and he worked approximately 55 to 60 hours per work.

On June 28, 2017, Robinson had stopped at a bus stop to pick up passengers when the bus was rear-ended. Robinson testified that at that time, he did not feel any pain. That evening,

however, he felt discomfort in his lower back and left leg. Robinson testified that the pain that night was "stiffness and soreness," and the next day his pain increased.

Robinson did not seek medical attention until he saw his primary care physician on July 6, 2017. Robinson filled out an injury report at Metro on July 10, although he testified that he believed he had notified someone at work prior to that date. The injury report indicated that Robinson had pain, stiffness, and soreness on the left side of his body, neck, shoulder, back, thigh, calf, and foot. On July 11, Robinson treated with Dr. Dean K. Wampler at CompChoice. Robinson testified that at the time he was experiencing leg pain that went "all the way to [his] foot" and that his leg was numb and sore. Wampler prescribed pain medication and sent Robinson to physical therapy, which Robinson testified improved his pain levels. At that point, Robinson testified he felt his pain was "90[] percent" improved and was not constant but rather appeared when he was "sitting down working and those type of things."

Wampler's written report stated that during an August 4, 2017, appointment, Robinson indicated continued concern about his knee and back. Wampler found no specific abnormalities, and, having seen the bus incident's footage, believed the incident to be trivial. Wampler told Robinson it was likely minor muscle tightness and asked him to continue with home exercises and to return in 2 weeks should he not see improvement. Robinson's nurse case manager called on August 11 to cancel Robinson's appointment, indicating that Robinson told her "he was doing fine," which Wampler believed "corresponds with Mr. Robinson's acknowledgement of resolving symptoms from his first accident."

*August 22, 2017, Incident.*

While operating a bus for Metro on August 22, 2017, Robinson was sideswiped by another vehicle. He testified that right after the collision, he felt pain in his lower back and "all the way down [his left] leg all the way to [his] foot." He testified the pain was "the exact same" and in the same area of his body as the June 28 injury. Robinson was told to go directly to see Wampler. Wampler prescribed medication and physical therapy, which Robinson completed.

Robinson testified that after the August 22, 2017, injury, his pain was constant and was generally getting worse. He reported hearing "a popping noise" in his lower back when shifting in his sleep that would wake him. Wampler's report indicates that physical therapy notes showed progressive improvement over four visits. Robinson again saw Wampler on September 11 and reported that his pain had improved to a level of minimal sporadic discomfort and that he no longer needed physical therapy. Wampler released Robinson and determined he was at maximum medical improvement (MMI). Wampler originally established September 11 as the date Robinson reached MMI, but later amended that to October 18 due to subsequent treatment.

Contrary to the representations he made to Wampler on September 11, 2017, Robinson testified at trial that physical therapy did not help him after the August 22 injury. He explained that he told Wampler he had improved because he was having financial problems and was missing work and overtime opportunities due to physical therapy.

Robinson returned to Wampler's office on September 25, 2017, because his pain had worsened, and the popping in his lower back resumed. He saw Dr. Darin Gregory, who indicated Robinson "showed tenderness to palpation over the left L4-L5 paraspinous muscles," so Gregory sent him back to physical therapy, and Robinson continued to work. Robinson returned to Gregory

on October 5, complaining that he had increased pain while driving at work that morning, so Gregory sent him for an MRI. The MRI report dated October 13 indicated degenerative disc changes at L4-L5, with "a very small central disk protrusion that did not impinge upon exiting nerve roots or the spinal cord" and "a mild annula disk bulge with a small posterior lateral bone spur." At L5-S1, there were "only minor degenerative facet joint changes without any disk abnormalities."

At an October 18, 2017, visit, Robinson indicated he was still in pain while sitting and driving, so Gregory referred him to a physiatrist. However, Robinson did not see the physiatrist, because "it just seemed like it was just a waste of time for me." Nonetheless, Robinson testified that the pain continued in his lower back and down his left leg. Despite the continued pain, he told the nurse case manager in December that his back was healed and he no longer needed appointments for it. He testified, however, that his pain had not subsided; rather, he told her he no longer had pain because of "[h]er attitude" and because he learned how to adjust his leg to ease the pain or wore a brace. He continued working at Metro full time, but claimed he was unable to do more than his required shift due to pain and told "pretty much everybody" about the pain. Metro employees, however, provided deposition testimony that refuted Robinson's assertions that he discussed with them any continuing back pain or that he told them it was a reason for his ultimate resignation.

Robinson did not seek further medical care from Wampler or Gregory until May 4, 2018.

*April 28, 2018, Incident.*

On April 28, 2018, Robinson was removing a window air conditioner unit and developed lower back pain. He testified the pain was in the same area and was the same type of pain he had previously experienced. At that time, he had no lifting restrictions from a doctor. He continued working, saw Dr. Brent L. Scott on May 4, who sent him home for the weekend to heat or ice the area, and saw Wampler again on May 7. Robinson testified that he felt "a little bit better" by the time he saw Wampler, although Wampler's notes from the visit state that Robinson's "simple resting over the weekend has made a big difference." Robinson was returned to work without restrictions because "his lumbar spine range of motion was fluid and uninhibited."

In July 2018, Robinson visited his primary care physician because he was "still in pain, a lot of pain," and he was referred to a specialist. Robinson could not recall any details regarding his visit to the specialist. He subsequently sought chiropractic treatment for a short time. Robinson continued to work full time at Metro and testified that his lower back and left leg pain persisted.

Robinson submitted his resignation notice at Metro in January 2019. He testified he did so because he "wasn't getting any better" and thought that if he took some time off, his back pain would resolve. He did not, however, resign at that time and continued working at Metro.

*February 24, 2019, Incident.*

On February 24, 2019, Robinson was shoveling snow when his back stiffened. The next day, he slipped on ice and felt subsequent pain that he testified was similar to and in the same areas as what he felt during the April 28, 2018, incident. Robinson returned to Wampler, who told him to stay off work until he was released for full-duty work on March 7.

In May 2019, Robinson resigned from Metro. He testified that his back pain was not improving and he had unrelated personal issues. He testified that he intended to restart his employment at Metro with the hope that time off would help improve the pain in his back and leg. Robinson explained that driving the bus caused pain, and he was unable to follow the instructions of his physical therapist to stretch and move when possible because of the demands of his shift.

Robinson sought treatment from Dr. Ernesto Padron, a pain management specialist, beginning in October 2019. He saw him approximately five times. Padron recommended cortisone shots and testosterone therapy, both of which Robinson rejected. He also ordered another MRI which showed that Robinson suffered from facet arthropathy, an annular tear, and stenosis, particularly in the L5-S1 region of his back. Padron recommended Robinson consult with a neurosurgeon. Although Robinson contacted the surgeon, he was advised he was not a surgical candidate.

*Trial Testimony and Evidence.*

At the time of trial, Robinson was employed driving a school bus 25 hours per week, making $18.76 per hour. He stated he continued to feel increased pain in his back while sitting and driving for more than 30 minutes at a time. He was also hired by a bus company in Des Moines, Iowa, but had only completed the training. The parties stipulated Robinson was employed by Metro at the time of the alleged June 28 and August 22, 2017, accidents.

Robinson offered written reports and deposition testimony of Padron. Padron testified that Robinson did not recover with therapy after the August 2017 injury and continued to experience lower back pain. However, prior to his deposition, Padron had not been made aware of the April 2018 air conditioner incident. Padron diagnosed Robinson with sacroiliitis, lower back pain, radiculopathy of the lumbar region, and chronic pain. In his written report, he causally related Robinson's continued complaints to his employment with Metro.

Medical records and reports of Wampler were also offered and received at trial. In contrast to the opinion offered by Padron, Wampler opined that Robinson suffered a lumbar strain in his work related accidents and had reached MMI in October 2017. The medical evidence of both physicians will be set forth in further detail in the analysis section of this opinion.

The compensation court determined Robinson had met his burden of proof establishing that he had suffered injuries arising out of the scope of his employment with Metro on June 28 and August 22, 2017. However, the court found Robinson had failed to meet his burden of persuasion to establish that he had suffered any injury from these accidents beyond that of a lumbar strain as diagnosed by Wampler. Therefore, relying upon Wampler's opinion that Robinson reached MMI in October, the court denied an award of medical expenses incurred after that date and any permanent disability and vocational rehabilitation benefits. Robinson timely appeals.

ASSIGNMENTS OF ERROR

Robinson assigns that the compensation court erred in (1) failing to apply the law applicable to independent intervening causes, (2) finding that a nonindustrial event broke causation between his work-related accidents and his injuries, and (3) finding that Robinson's current low back problems were not the direct and natural result of his work-related accidents and injuries sustained therein.

STANDARD OF REVIEW

Pursuant to Neb. Rev. Stat. § 48-185 (Cum. Supp. 2020), an appellate court may modify, reverse, or set aside a compensation court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Aboytes-Mosqueda v. LFA Inc.*, 306 Neb. 277, 944 N.W.2d 765 (2020).

On appellate review, the factual findings made by the trial judge of the compensation court have the effect of a jury verdict and will not be disturbed unless clearly wrong. In testing the sufficiency of the evidence to support the findings of fact in a workers' compensation case, an appellate court considers the evidence in the light most favorable to the successful party, every controverted fact must be resolved in favor of the successful party, and the appellate court gives the successful party the benefit of every inference reasonably deducible from the evidence. *Id.*

ANALYSIS

Robinson argues that the compensation court failed to adequately apply the law of intervening causes, thus incorrectly determining that the accidents of April 28, 2018, and February 24, 2019, were intervening causes for the source of his back pain. However, the court made no such determination; rather, it concluded that the uncertainties in Padron's testimony undermined his opinion that Robinson's complaints following the air conditioner incident were causally related to his work-related accident. And because Robinson's complaints were subjective, expert testimony was required to prove causation. The compensation court specifically stated in its order that it "does not mean to suggest or otherwise infer that the plaintiff has any burden of proof relative to the possibility of an intervening cause." The compensation court did not engage in an analysis of whether the subsequent non-work-related accidents were intervening causes because it found Robinson failed to prove his back complaints after April 2018 were causally related to his work accidents. We agree.

The Nebraska Workers' Compensation Act provides that when an employee suffers personal injury caused by accident or occupational disease, arising out of and in the course of his or her employment, such employee shall receive compensation from his or her employer if the employee was not willfully negligent at the time of receiving such injury. *Hintz v. Farmers Co-op Assn.*, 297 Neb. 903, 902 N.W.2d 131 (2017). In order to recover under the Nebraska Workers' Compensation Act, a claimant has the burden of proving by a preponderance of the evidence that an accident or occupational disease arising out of and occurring in the course of employment proximately caused an injury which resulted in disability compensable under the act. *Hintz v. Farmers Co-op Assn., supra*. If the nature and effect of a claimant's injury are not plainly apparent, then the claimant must provide expert medical testimony showing a causal connection between the injury and the claimed disability. *Id.*

Here, the compensation court considered the expert medical opinions of two doctors, Wampler and Padron, noting that their opinions conflicted with each other. Wampler indicated in his report that Robinson had reached MMI as of October 18, 2017, because, although he still reported some back pain, he declined a physiatry referral and reported that he "had gotten better." Wampler opined that the subsequent air conditioner incident resulted in new symptoms of left

lower extremity radiculopathy which was consistent with a change of pathology in Robinson's spine. Specifically, Wampler noted that the small L4-5 disk protrusion apparent in the 2017 MRI had "disappeared" by the time the 2019 MRI was performed. Additionally, the 2019 MRI indicated a new pathology at L5-S1 and even if this was the same as seen at the L4-5 level on the earlier MRI, the 2019 MRI depicted an annular tear, which was consistent with a new injury.

Padron, however, concluded in his written report that Robinson's continued complaints were causally related to his work accidents. In considering Padron's opinions, however, the court found that "certain aspects of [Padron's] deposition testimony [were] exposed upon questioning by defense counsel [and] served to erode or disvalue these earlier expressed written opinions," particularly surrounding the discussion of Robinson's MRI results, due to the indefinite language Padron utilized in answering questions. The court also noted that Padron's written opinion was formed without knowledge of Robinson's incident with the air conditioner.

A workers' compensation claimant has the evidentiary obligation to present medical testimony that is sufficiently definite and certain to permit drawing a conclusion that there is a causal connection between the accident and the disability. *Edmonds v. IBP, inc.*, 239 Neb. 899, 479 N.W.2d 754 (1992). Expert medical testimony based on "could," "may," or "possibly" lacks the definiteness required to support an award. *Id.* "If an inference favorable to the claimant can only be reached upon the basis of possibility or speculation, he cannot recover. . . . An award cannot be based upon conflicting inferences of equal degrees of probability." *Husted v. Peter Kiewit & Sons Constr. Co.*, 210 Neb. 109, 113-14, 313 N.W.2d 248, 251 (1981).

During his deposition, Padron utilized indefinite language in stating his medical opinions. When asked if the two bus accidents were the cause of the issues in Robinson's spine at the L5-S1 level, Padron stated, "There's no imaging after the first, before the second, and there's no imaging before the first. So the annular tear is new compared to the previous MRI. Without having imaging immediately before and immediately after, I can't say what was what." Similarly, when asked about Robinson's current pain and if that aligned with the first MRI's findings, Padron responded, "It can, yeah. Well, I mean, now I don't know." When asked if a tear would contribute to Robinson's pain, Padron replied, "It can." When asked about the correlation between the arthritis found in the first MRI and the second bus accident, Padron stated, "It could have been -- I don't think it was caused by [the accident], but it could have made it symptomatic."

Padron used equivocal language in stating his opinion regarding Robinson's injuries during his deposition; contrastingly, Wampler unequivocally stated in his written opinion that Robinson had reached MMI in October 2017 and manifested new symptoms after the April 28, 2018, incident. Thus, the court was not clearly erroneous in finding that Robinson had failed to prove a causal connection between his current disability and his employment because Padron's expert medical testimony based on "could," "may," or "possibly" lacked the definiteness required to support a finding of causation. See *Edmonds v. IBP, inc., supra*.

In determining that Robinson failed to establish a causal connection between the work related accidents and his current complaints, the compensation court also questioned Robinson's credibility noting "certain discomforting elements in [his] presentation." We observe there were several instances in which the medical records indicate Robinson advised his providers that his condition had improved or resolved, but Robinson testified at trial that his statements were untrue when made. This serves to undermine Robinson's position that he continued to experience pain

after the date on which Wampler determined he reached MMI. The compensation court also noted that although Robinson testified he told his coworkers of his continuing back pain, their deposition testimony did not support this assertion.

Robinson contends that Wampler's referral to a physiatrist and simultaneously placing Robinson at MMI is contradictory. He also asserts that continued pain contradicts a valid MMI designation. Robinson does not assign as error the compensation court's factual finding that he achieved MMI in October 2017, but to the extent his argument relates to his assertion that his current condition is the result of his work related accidents, we briefly address it.

The Nebraska Supreme Court detailed in *Briggs v. Consolidated Freightways*, 234 Neb. 410, 415, 451 N.W.2d 278, 283 (1990):

> "The fact that some treatment is still necessary, such as physical therapy or drugs, does not necessarily rule out a finding that the condition has become stabilized, if the underlying condition causing the disability has become stable and if nothing further in the way of treatment will improve that condition. . . . The persistence of pain may not of itself prevent a finding that the healing period is over, even if the intensity of the pain fluctuates from time to time, provided again that the underlying condition is stable."

(Citing 2 A. Larson, The Law of Workmen's Compensation § 57.12(c) (1989)).

Robinson told Wampler his pain had improved to a level of minimal sporadic discomfort and that he no longer needed physical therapy. He had rated his pain severity at his last therapy session at a 1 out of 10. As such, Wampler's referral to a physiatrist and simultaneous designation of MMI was not inappropriate, as the evidence suggests that Robinson's condition had stabilized and further treatment would not have benefitted him. Thus, we find no inconsistency.

## CONCLUSION

Because Robinson failed to meet his burden of proof that his current condition was causally related to his work accidents of 2017, we affirm the decision of the compensation court.

AFFIRMED.