FRANK CATLIN, APPELLANT, V. PRAIRIE MARKETING, APPELLEE.

476 N.W.2d 234

Filed October 25, 1991.    No. 91-040.

Roy A. Sheaff, of Sheaff Law Offices, for appellant.

Allen J. Potts and Ronald E. Frank, of Sodoro, Daly & Sodoro, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

HASTINGS, C.J.

Plaintiff, Frank Catlin, appeals an order of dismissal entered by a three-judge panel of the Workers' Compensation Court. Compensation was sought by the plaintiff for back injuries he alleged arose from his employment by the defendant, Prairie Marketing. The compensation court found that plaintiff failed to prove by a preponderance of the evidence that he suffered an accident as that term is defined in Neb. Rev. Stat. § 48-151(2) (Reissue 1988). We affirm.

This court will not set aside factual determinations by the Workers' Compensation Court unless those determinations are clearly erroneous. *Tarvin v. Mutual of Omaha Ins. Co.*, 238 Neb. 851, 472 N.W.2d 727 (1991). This court must consider the evidence in the light most favorable to the prevailing party in determining the sufficiency of the evidence supporting a finding of fact. *Id.*

The evidence submitted to the trial court consisted of direct testimony by the plaintiff, portions of the testimony received at the hearing before one judge of the compensation court, and various medical reports.

On February 1, 1986, Catlin worked a 24-hour shift at his job as a truckdriver for Prairie Marketing. The following day, Catlin was unable to get out of bed because he "couldn't get [his] legs to work," and because of pain in his lower back.

The record does not disclose exactly how, when, or where Catlin was injured. He said that his job involved driving a truck, mechanical work, working in the shop, and a lot of heavy lifting, as well as occasionally loading and unloading his truck. It is unclear which, if any, of these activities caused his back symptoms.

Catlin testified that on February 1, 1986, he worked 13 hours in Prairie's plant. He then drove a truck to Scottsbluff, unloaded the truck, and returned to Lincoln. Apparently, Catlin had to perform lifting tasks to unload the truck. The record is otherwise largely devoid of details as to Catlin's activity during any portion of his Scottsbluff trip.

According to Catlin, the road he took on February 1 was "pretty rough." He said that the truck he was driving had a seat which allowed him to "bounce" as he drove over the rough road.

Catlin testified variously to feeling his back "give," feeling something "pop," and feeling "a sharp pain." The "give" was described as happening "in the western part of the state there," just as Catlin was "getting to finish up loading"; the "pop" apparently occurred while Catlin was bouncing in the truck's seat on the rough road; and the "sharp pain" occurred either "on the return trip back" or "after the last load," while Catlin was "running empty."

According to the history contained in Dr. Leonard Weber's report, which history was obtained from Catlin, "He does not know of anything that provoked this [pain]." The history contained in Dr. Michael Morrison's report was simply that "he apparently went to get out of bed after a long truck ride and experienced pain in his lower back with radiation into his right leg."

In Dr. Thomas Green's report, he stated, "In regards to the history I was given from Mr. Catlin on 2-3-86, Mr. Catlin reported he had driven 823 miles and made '3 drops' in twenty-three hours. He had also lifted boxes loading and unloading."

At the first hearing, Catlin testified that "I was out in the western part of the state there and just getting to finish up loading, and I felt my back give." During the course of Catlin's testimony, the compensation court judge asked what happened to him. Catlin replied:

> To clear it up, when I got unloaded out in Scottsbluff, you got a single-axle trailer and a single-axle tractor, and it's pretty rough road out there. Well, I had a seat in there that had a little gap in it, and it was an '83 or '84, I can't

remember now.

But I felt a — something pop there. But you're getting a lot of bounce. It didn't have the newer seating, had the old Boston style seat. Well, I didn't think nothing of it; just like you get gas in your stomach out there on the road, you don't think nothing of it.

The judge questioned Catlin further:

Q. Mr. Breiner asked you the questions; you said that you were loading the truck and you felt a pain in your back. At least that's the way I understood it.

A. Yes.

Q. Three minutes ago, you told me that the jiggling of the seat, bouncing of the seat cushion in the seat, the gap in the seat —

A. Uh-huh.

Q. — caused you a pain in your back.

A. (The witness nods.)

Q. Okay. You've apparently told the doctors that you had just been doing some heavy work. What happened on February 1, 1986?

. . . .

Q. . . . .

Was there anything — and I don't want to put words in your mouth either, but was there anything on February 1, 1986, that you remember doing that caused a back pain or —

A. No. I don't remember of any, any kind of — right at that time, no.

Q. All right.

Finally, during direct testimony at the rehearing, Catlin's testimony was as follows:

Q. What happened after you finished your run on February 1, 1986?

A. That's when I — After the last load, I was running empty, and I felt a sharp pain in my back. Then I went in and dropped the trailer at the plant and took the tractor home.

The accident which Catlin alleged in his petition was that he had worked 16 straight hours at Prairie's plant and proceeded to

drive his truck along his designated route, and after sleeping, he awoke with pain in his lower back and right leg. Dr. Green, the chiropractor who originally treated Catlin, opined that Catlin's back injury was a result of the prolonged driving and lifting which he had performed.

Catlin does not explain in his argument how working 16 hours and driving his truck constitute an accident. An accident, under the Workers' Compensation Act, is "an unexpected or unforeseen injury happening suddenly and violently, with or without human fault, and producing at the time objective symptoms of an injury." § 48-151(2). In order to have been the result of an accident, Catlin's injury must have been unexpected or unforeseen, have occurred suddenly and violently, and have produced objective symptoms. See *Masters v. Iowa Beef Processors*, 220 Neb. 835, 374 N.W.2d 21 (1985).

> "The mere fact that one may become ill or experience pain during employment does not in and of itself prove that the employee is disabled as a result of an 'accident' arising out of and in the course of employment, entitling the individual to compensation under the act. . . ."

*Hamer v. Henry*, 215 Neb. 805, 808, 341 N.W.2d 322, 325 (1983). In light of the record, viewed most favorably to Prairie, a finding that Catlin's injury did not occur "suddenly and violently" so as to support a finding that he did not suffer an accident within the meaning of the Workers' Compensation Act would not be clearly erroneous.

Furthermore, the record does not support a finding that whatever happened produced objective symptoms within the meaning of the Workers' Compensation Act. The "objective symptoms" requirement of the act is satisfied where either the nature and effect of the injury are plainly apparent or there is expert testimony showing a causal connection between the injury and the claimed disability. *Mack v. Dale Electronics, Inc.*, 209 Neb. 367, 307 N.W.2d 814 (1981). It is not plainly apparent how driving or unloading a truck causes a back injury, where there is no specific evidence of the circumstances under which the injury occurred. Moreover, Dr. Green's opinion was simply that Catlin's back injury was a result of the prolonged driving and lifting he had performed. There was no medical

testimony as to how a specific activity caused Catlin's symptoms. Dr. Ronald Schwab, an orthopedic physician, stated in his report that Catlin has "possible degenerative spondylolisthesis L5 on S1, possible herniated lumbar disc," but offered no suggestion as to the cause of such condition. A similar diagnosis was made by both Dr. Weber, a neurologist, and Dr. Morrison, an orthopedic surgeon, with no suggestion as to the cause, except in the case of Dr. Morrison, who said the condition was longstanding, "which he apparently has aggravated recently." Upon this record, a finding that Catlin had not proved objective symptoms related to any work-induced incident would not be clearly erroneous.

Because findings that Catlin had not proved a sudden and violent injury or demonstrated objective symptoms would not be clearly erroneous, the compensation court's general finding that Catlin had not proved he suffered an accident cannot be clearly erroneous.

The judgment of the compensation court is affirmed.

AFFIRMED.