CONNIE FOWLER, APPELLANT, V. LESTER ELECTRIC AND THE
TRAVELERS INSURANCE COMPANY, APPELLEES.

501 N.W.2d 728

Filed April 6, 1993.    No. A-92-520.

Rod Rehm, P.C., for appellant.

Michael K. High, of Bruckner, O'Gara, Keating, Hendry, Davis & Nedved, P.C., for appellees.

CONNOLLY, HANNON, and WRIGHT, Judges.

CONNOLLY, Judge.

## I. INTRODUCTION

This appeal arises from the decision on rehearing of the Nebraska Workers' Compensation Court, which reversed and set aside a prior judgment for the appellant and dismissed the appellant's claim. The rehearing panel found that the opinion of the appellant's medical expert that it "appeared" the appellant's injury was work related was insufficient as a matter of law to prove the necessary causal relationship between the injury and the job. We affirm.

## II. FACTS

### 1. The Alleged Injury

Connie Fowler, the appellant, was working for Lester Electric (Lester) in October 1989 when her job task was changed from light, repetitive production work to heavier preassembly work, which included significant movement of her arms and hands at or above the shoulder level. On March 22, 1990, Fowler went to her physician, Dr. Wilbur Wiedman, for treatment of pain in her arms that she claimed had developed after the switch to preassembly duty. Dr. Wiedman diagnosed bilateral brachial plexus syndrome. Pursuant to Dr. Wiedman's orders, Fowler was taken off work until March 28.

Fowler returned to work during the first week of April, but shortly thereafter sought help from a chiropractor, Dr. Jeffrey Freeman, because the pain in her arms and hands had persisted. Apparently, Fowler was taken off work for a week, resumed light-duty work for a short while, then was taken off work again. (Though both parties refer to it, the relevant portions of the copy of Dr. Freeman's report preserved in the record in subexhibit 4 of exhibit 1 are indecipherable.) In a letter dated June 12, 1990, Dr. Freeman determined that Fowler had been suffering from cervicobrachial syndrome.

In June 1990, Dr. Freeman referred Fowler to Dr. Daniel Ripa, an orthopedic surgeon. Dr. Ripa sent Fowler to Lincoln Neurology, where Drs. Douglass Decker and Richard Sposato performed nerve conduction and electromyogram tests. All test results were negative. Dr. Ripa released Fowler for work June 27, 1990, and she resumed light duty. In a letter dated November 29, Dr. Ripa stated that the test results from Lincoln Neurology had led him to conclude there was "no evidence of permanent physical impairment directly as a result of [Fowler's] work-related activities."

Fowler continued to experience pain in her arms, shoulders, and neck. On February 14, 1991, she sought treatment from Dr. Patrick Clare. Dr. Clare diagnosed possible internal derangement and impingement of the right shoulder. He prescribed a regimen of physical therapy and an exercise program. One month later, Dr. Clare recommended an

arthrogram and a computerized tomography scan of the right shoulder, both of which tested negative. In October 1991, Dr. Clare referred Fowler to Dr. Paul Collicott, a surgeon, to check for thoracic outlet syndrome. Dr. Collicott ruled out thoracic outlet syndrome as the cause of Fowler's pain.

Fowler continued with physical therapy. She was fired by Lester on April 12, 1991. On April 15, in an effort to get her job back, Fowler obtained a letter from her physical therapist setting out restrictions within which she could work. Lester did not change its decision.

## 2. PROCEDURAL HISTORY

On April 16, 1991, Fowler filed a claim against Lester in the Nebraska Workers' Compensation Court. In its award of December 19, 1991, the court found that Fowler was suffering from injuries resulting from her work at Lester. The court ordered Lester to pay specified medical expenses and temporary total disability benefits in the amount of $146.67 per week for 39²/₇ weeks, less the $1,629.56 Lester had already paid Fowler. The court also retained jurisdiction of the case to allow for a future determination of permanent partial disability and vocational rehabilitation benefits.

Fowler applied for a rehearing, which was held March 23, 1992. Fowler was the only live witness at the rehearing. The deposition of Dr. Clare was received and filed April 20. The deposition included the following colloquy during direct examination by Fowler's counsel:

[Counsel:] . . . [D]o you have an opinion you can state with reasonable medical certainty as to whether or not [Fowler] sustained an injury from a work related activity? That's just a yes or no.

[Dr. Clare:] Yes.

[Counsel:] And what is your opinion?

. . . .

[Dr. Clare:] That it would appear so.

[Counsel:] . . . [W]ould you explain your opinion?

[Dr. Clare:] I guess the history of the onset of her shoulder pain and I guess the persistence of her symptoms, and I said it would appear so rather than saying definitely

because we do have some negatives here as far as some of the studies, her CT scan, arthrogram and so forth and, I think, the response she's had to therapy to a degree.

The rehearing panel found that Fowler had "failed to prove by a preponderance of the evidence that she suffered any injury arising out of and in the course and scope of her employment" at Lester. The court quoted the colloquy set out above and found as a matter of law that Dr. Clare's opinion did not provide the reasonable degree of certainty necessary to prove the causal link between Fowler's physical pain and her duties at Lester. The award of December 19, 1991, was reversed and set aside, and Fowler's claim was dismissed.

### III. ASSIGNMENT OF ERROR

Fowler's third assignment of error, that the court erred in finding that she was not entitled to payment of medical expenses, was not discussed in the brief, so we do not consider it. In any event, her first and second assignments of error are dispositive of the case. We combine them into the following assignment of error: The court erred in finding that Dr. Clare's opinion was insufficient to prove a causal relationship between Fowler's physical pain and her jobs at Lester.

### IV. STANDARD OF REVIEW

Regarding a question of law, an appellate court has an obligation to reach a conclusion independent of that of the trial court. *Nebraska Builders Prod. Co. v. Industrial Erectors*, 239 Neb. 744, 478 N.W.2d 257 (1992).

### V. ANALYSIS

In a workers' compensation case, the plaintiff must establish by a preponderance of the evidence that the injury for which an award is sought arose out of and in the course of employment. *Edmonds v. IBP, inc.*, 239 Neb. 899, 479 N.W.2d 754 (1992). If the nature and effect of a claimant's injury are not plainly apparent, then the claimant must provide expert medical testimony showing a causal connection between the injury and the claimed disability. See *Catlin v. Prairie Marketing*, 239 Neb. 363, 476 N.W.2d 234 (1991). While expert medical testimony need not be couched in the magic words "reasonable degree of

medical certainty or reasonable probability," such testimony couched in terms of possibility is not sufficient. See *Edmonds v. IBP, inc., supra.* See, also, *Fuglsang v. Blue Cross*, 235 Neb. 552, 456 N.W.2d 281 (1990) (a medical opinion that it is more likely than not that an injury occurred at a given time lacks the definiteness and certainty necessary for it to be the basis for a compensation award). An expert's opinion must be examined in the context of the expert's entire testimony. *Renne v. Moser*, 241 Neb. 623, 490 N.W.2d 193 (1992).

The nature and effect of Fowler's injury were not plainly apparent. Indeed, the record indicates that the various medical professionals who examined Fowler had difficulty determining the nature and effect of her injury. Regardless of how real her physical suffering may have been, Fowler was not entitled to relief under the Workers' Compensation Act unless she could prove by expert testimony a causal link between her physical condition and her employment at Lester.

The only offer of proof connecting Fowler's physical condition to her job was the expert opinion of Dr. Clare, who testified that it appeared Fowler had sustained injury from work-related activity. Our decision turns on the legal interpretation of the phrase "it would appear so" in the context of expert medical testimony. We must decide on the facts before us whether the phrase "it would appear so" constituted the reasonable degree of medical certainty required to prove causation in a workers' compensation case.

We agree with the Workers' Compensation Court that this case is controlled by *Edmonds*. Referring to a medical expert's report stating " 'it appears that the thoracic outlet syndrome appears to be related to the repetitive-type of work that [Edmonds] was doing at [IBP],' " *Edmonds*, 239 Neb. at 902-03, 479 N.W.2d at 756, the Nebraska Supreme Court stated that "to write that Edmonds' thoracic outlet syndrome appears to be work related is no different from saying that the work may have precipitated the condition," *Edmonds*, 239 Neb. at 904, 479 N.W.2d at 757. The court went on to state:

> Edmonds' evidentiary obligation was to present medical testimony which was sufficiently definite and certain to permit drawing a conclusion that there was a causal

connection between the [work-related] accident and the disability. [Citations omitted.]

[The medical expert] did not conclude that Edmonds' work was the cause of her thoracic outlet syndrome but, rather, that it "may have well precipitated" the condition.

As defined in The American Heritage Dictionary 774 (2d coll. ed. 1985), "may" is "[u]sed to indicate a certain measure of likelihood or possibility." However, an award cannot be based on mere speculation or possibility. [Citations omitted.]

*Edmonds*, 239 Neb. at 904, 479 N.W.2d at 757. The court held that Edmonds had failed as a matter of law to prove a causal connection between her disability and her employment.

From *Edmonds* we know that the opinions "[a condition] appears to be work related" and "the work may have precipitated the condition" are equivalent. "[M]ay have precipitated" does not satisfy the reasonable degree of medical certainty standard required for proof of causation. Logic dictates that "appears to be" also does not satisfy the requisite standard of proof. Therefore, Dr. Clare's opinion that Fowler's injury *appeared* to be work related is insufficient as a matter of law to prove causation, particularly when we consider the way Dr. Clare tempered his opinion by referring to the "negatives" that militated against a finding of causation.

AFFIRMED.