IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


FRANS V. WALDINGER CORP.


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


ERIC M. FRANS, APPELLEE,

V.

WALDINGER CORPORATION AND EMC INSURANCE CO., APPELLANTS.


Filed January 28, 2020.    No. A-19-482.


Appeal from the Workers' Compensation Court: DANIEL R. FRIDRICH, Judge. Reversed and remanded with directions.

Caroline M. Westerhold and Jenna M. Christensen, of Baylor Evnen, L.L.P., for appellants.

Maynard H. Weinberg, of Weinberg & Weinberg, P.C., for appellee.


MOORE, Chief Judge, and BISHOP and ARTERBURN, Judges.

MOORE, Chief Judge.

INTRODUCTION

Waldinger Corporation (Waldinger) and its workers' compensation insurance carrier EMC Insurance Company (collectively the Appellants) appeal from the order of the Nebraska Workers' Compensation Court, which awarded Waldinger's former employee Eric M. Frans ongoing future medical care for an injury he suffered in an accident arising out of and in the course of his employment with Waldinger. For the reasons set forth herein, we reverse, and remand with directions to dismiss Frans' amended complaint.

BACKGROUND

On October 30, 2002, Frans suffered an injury in an accident arising out of and in the course of his employment with Waldinger. Frans was injured when a garage door came down and struck him on the top of his head. Frans initially complained of neck, head, and low-back pain. After

- 1 -

Frans' neck pain resolved, his treatment then focused on his low-back injury. Frans returned to light duty work with Waldinger after the accident and continued in that capacity until he was laid off in 2005.

On June 30, 2008, Frans filed a petition (2008 petition) in the compensation court, alleging he injured his head, neck, midback, and lower back in the October 2002 work-related accident.

On November 25, 2008, the parties filed an application to approve a lump-sum settlement agreement leaving medical liability open (settlement agreement). Therein, the parties agreed that "the type of injury/illness is to [Frans'] lower back." And, the parties agreed "to resolve, on a final basis, all issues except [Frans'] entitlement to receive reasonable and necessary medical treatment as a result of [his] low back condition, the cost of which [was] to be paid by [the Appellants] pursuant to Neb. Rev. Stat. § 48-120." The settlement agreement stated that Frans understood he would "continue to receive future workers' compensation medical, hospital or miscellaneous expenses as a proximate result of the accident on 10/30/02." It also stated his understanding that "upon paying the court approved amount of $149,000.00, [the Appellants] are fully discharged from all further liability except for future reasonable and necessary medical care . . . on account of the accident and injury(s) of 10/30/02, whether now known or to become known in the future, whether physical *or mental*, unless the settlement was procured by fraud . . ." (Emphasis supplied.)

On December 11, 2008, the compensation court entered an order approving the settlement agreement and dismissing Frans' petition. The court approved the settlement, ordered the Appellants to pay Frans the lump sum of $149,000, and found that Frans sustained an accident as alleged on October 30, 2002, which arose out of and in the course of his employment with Waldinger "for which he shall be entitled to future medical treatment." The court then dismissed Frans' 2008 petition.

On October 4, 2018, Frans filed a petition (2018 petition) in the compensation court, claiming he injured his head, neck, and low back in the October 2002 accident. He requested "CONTINUING MEDICAL TREATMENT ONLY."

On December 11, 2018, the Appellants filed a motion for summary judgment, alleging that under the settlement agreement, Frans waived all rights and benefits related to the October 2002 accident, "except his entitlement to future medical causally related to his low back condition" and that he was precluded under the settlement agreement from seeking benefits for his head and neck. They also alleged that all benefits related to the low-back injury to date had been paid and that they were unaware of any current disputes associated with Frans' low-back condition.

On January 16, 2019, the compensation court entered an order overruling the Appellants' motion for summary judgment. The court found that the Appellants were liable "only for the medical treatment for [Frans'] low back injury and any other medical care that was caused by his low back injury." The court stated further that if Frans hoped to prevail at trial, "he must show that his head and neck injuries are somehow causally related to his low back injury."

On February 22, 2019, Frans filed an amended petition (2019 amended petition), again claiming he injured his head, neck and lower back in the October 2002 accident. In the 2019 amended petition, he requested "continuing medical treatment including but not limited to treatment for depression arising as a result of the 10/30/02 back injury as well as other treatment related to the back injury."

Trial was held before the compensation court on April 2, 2019. The court received various medical records and reports, copies of the settlement agreement and certain pleadings, and other documentary evidence. Testimony was heard from Frans; his wife; a physical therapist who treated Frans' back; and Holli A. Schifferns, a licensed mental health practitioner who began treating Frans for "major depressive disorder" in March 2018. A colleague of Schifferns treated Frans prior to Schifferns taking over his case. Given the issues on appeal, we have only recounted the medical evidence relating to Frans' anxiety and depression.

Frans testified about the October 2002 accident and the subsequent medical treatment of his physical injuries, including the treatment he was receiving for his back at the time of trial. Frans testified about his depression and anxiety, indicating that in the first couple of years after the accident, he "was in a lot of pain everywhere," "was in deep depression," and "was having thoughts of suicide" although he did not tell anyone. He indicated that the narcotic drugs he was receiving for his pain helped somewhat, but that the pain was "always there" and "never stopped." According to Frans, he never had depression or received treatment for it prior to the October 2002 accident, but he indicated that he had seen a doctor before the accident "for approximately ten months for stress." At that time, Frans was treated with Paxil and Xanax; he testified that he stopped taking Paxil on September 9, 2002, and that he believed he stopped taking Xanax "in the same month." After the accident, Frans described his depression as "a roller coaster ride" that increased or decreased with his level of pain. At the time of trial, Frans was undergoing therapy with Schifferns and receiving management of his psychiatric medications from another individual. On cross-examination, Frans confirmed that his issues with depression developed approximately within a year of the accident, that he had thoughts of suicide, and that he did not tell his wife about these issues until sometime later. He agreed that he and his wife communicated with one of his medical doctors about his depression in 2004 and that he had been stressed "[a] little bit" by some recent health issues experienced by his wife.

Frans' wife testified that she was unaware of any medical treatment of Frans for major depressive disorder prior to October 30, 2002.

The medical records admitted into evidence at trial show that Frans had a history of anxiety preceding the October 2002 accident and injury. In December 2001, Frans was treated by a medical provider for panic attacks caused by stress at work. He was given the medications Paxil and Xanax. By April 2002, Frans had been diagnosed with generalized anxiety disorder and panic attacks. An office note from April 10 states that Frans had no depression. He was doing "exceptionally well on Paxil" and rarely taking Xanax, but because he was concerned about weight gain, his medical provider was stopping the Paxil and providing samples of Celexa for him to try. By September 9, Frans had stopped taking both Celexa and Paxil (which he resumed for a period after trying Celexa). Frans was doing "extremely well" after being off of Paxil for about a month and was only using Xanax "once a week on average."

According to the medical history Frans provided to psychiatrist Dr. Bruce Gutnik in 2019 at the time of a psychiatric diagnostic evaluation, Frans saw a mental health professional twice in 2003 who told him that "'shit happens.'" On May 4, 2006, Dr. Consuelo Lorenzo, who was seeing Frans for a followup visit after he had completed a program of physical therapy, noted that Frans was taking Celexa and Xanax as needed. Her office note primarily addressed his physical condition

and further treatment of his back and does not mention anything about him suffering from or being treated by her for depression and/or anxiety. In a deposition taken in January 2007, Frans testified that he was taking Celexa for depression and anxiety and noted that his family members thought it helped him. Neither Lorenzo's May 2006 office note nor the portion of the 2007 deposition admitted into evidence reveal who was prescribing this medication for Frans. In an office note from September 2011, Lorenzo noted that Frans was taking Celexa. On January 24, 2013, Frans saw Dr. Chris Criscuolo for a followup visit on his "chronic back pain." The list of "Chronic Problems" from which Frans was suffering identified in Criscuolo's office note from that visit included "Panic Attack" and "Depression with anxiety."

The first office note documenting treatment specifically for mental health matters in the record came from Molly Peterson, APRN, at InRoads to Recovery. On June 9, 2015, she noted that Frans was there for a follow up visit and was "sleeping very well." She noted his depression "is hard right now due to trouble with his wife's health and her having work problems and he feels bad he can't work." Peterson noted that Frans was "willing and would like to try therapy to see if this helps with the depression." She diagnosed Frans with "GAD" and "MDD" (presumably generalized anxiety disorder and major depressive disorder) and prescribed Brintellix, Celexa, trazodone, and clonidine. In September 2015, Dr. Jeremiah Ladd conducted a comprehensive medical review of Frans. In the history section of his report, in addition to documenting the history of Frans' treatment for his back pain, Ladd noted that Frans was "working with a psychiatrist and pain management counselor with improvement in his control of depression."

On December 20, 2016, Frans was seen by Kimberly Camp-Grimit, APRN, at InRoads to Recovery for a followup appointment. At that time, he reported that he had been dealing with ongoing neck pain and migraines, but he reported that both of these issues were improving. Frans was also "managing the stress of the holidays." Camp-Grimit's diagnoses were "GAD" and "MDD recurrent moderate." Camp-Grimit and Frans discussed Frans "returning to therapy" and possibly increasing his Prozac dosage if his depression did not improve. Frans' prescribed psychiatric medications at that time were Prozac, trazodone, clonidine, and Topamax. In an October 3, 2018, letter from Camp-Grimit, addressed to "To Whom It May Concern," she explained that clonidine is used to aid in sleep and reduce anxiety; Prozac is used for depression, anxiety, and mood regulation; Topamax is used for headaches, anxiety, sleep, and weight loss; and trazodone is used to "help [Frans] stay asleep."

In June 2018, Frans was treating with Holli A. Schifferns, a licensed mental health practitioner. Her office notes from June 7 state that Frans was struggling with stress "because of Workmen's Comp. issues." Specifically, she noted that Frans reported "concerns about his quality of life if they want to discontinue medication therapy." She also noted that Frans was stressed over a recent health issue concerning his wife. During the visit, Schifferns provided interpersonal therapy and cognitive behavioral therapy. At trial, Schifferns testified that Frans would benefit from further counseling to improve his major depressive disorder. She also expressed that it would be helpful to him, in conjunction with therapy, to continue medication management with his medication provider.

The next office note in the record relating to depression is one from Camp-Grimit dated January 15, 2019. She noted "[w]orsening, increased stress with his workman's comp company

possibly refusing to cover his medical expenses related to his head/back/neck injury." Frans reported feeling depressed about an upcoming court date, and he complained that he struggled to stay asleep through the night, although this issue had been improved due to an increase in his trazodone dosage. The diagnosis provided was "Major depressive disorder, recurrent, moderate;" "Generalized anxiety disorder;" and "Insomnia due to other mental disorder."

On January 25, 2019, Dr. Syed Sattar performed a psychiatric assessment of Frans after his referral to Sattar by his "current psychiatric nurse practitioner." Sattar noted that Frans had been dealing with depression, anxiety, sleep problems, and pain, which Frans reported as having started after his work injury in October 2002. Sattar noted that Frans had been tearful and depressed; having mood swings, trouble with sleep, and disabling anxiety; and having panic attacks, which added to his breathing problems and his back pain. Sattar noted that Frans had been on psychiatric medications since 2013, which had proven "somewhat helpful," although Frans' symptoms had not completely resolved with such medications. Sattar diagnosed "[m]ajor depressive disorder, recurrent, moderate." He recommended that Frans continue with his outpatient treatment plan and his prescribed medications of Prozac, clonidine, trazodone, and Topamax. Sattar stated, "His problems do appear to be dating to the date of the injury and there is no history available that predates the injury on 10-30-02."

Frans retained Dr. Bruce Gutnik to provide a psychiatric diagnostic evaluation of him. Gutnik evaluated Frans on March 7, 2019. Frans reported to Gutnik that he became depressed after the work injury and even more depressed after being laid off in 2005. The first instance of mental health treatment reported by Frans to Gutnik was his contact with a mental health professional in 2003 that we noted above. Gutnik reviewed Frans' past medical records beginning in June 2003, and performed a mental status evaluation. He opined that Frans "suffers from both Major Depressive Disorder, Single Episode Moderate and Generalized Anxiety Disorder with Anxiety and Panic." As to causation, Gutnik wrote:

> Mr. Frans appears to have been suffering from Major Depressive Disorder and Generalized Anxiety Disorder for a number of years. He dates his depression and anxiety back to his injury of 2002 and to 2005 when he was terminated. Much of his self-esteem was dependent on his ability to do a good job and manage people. The combination of severe pain which has been difficult to treat and significant anxiety which aggravates the pain, along with the loss of job and status, have left Mr. Frans depressed and anxious.

> To be sure, Mr. Frans['] psychiatric symptoms have been aggravated by the loss of his parents and more recently his dog. Further, he is stressed about the upcoming court date. However, his current psychiatric conditions began with his 2002 injury and as noted were aggravated by his termination in 2005.

The Appellants had Frans examined by Dr. Robert Arias, who conducted a neuropsychological evaluation of him on March 19, 2019. Arias diagnosed, by history, generalized anxiety disorder, panic disorder, and alcohol use disorder. He provisionally diagnosed an unspecified personality disorder. Arias stated, "These results revealed evidence of somatic symptom magnification empirically in his MMPI-2 results." Arias did not believe any of Frans' psychological conditions were caused by his low-back injury or the October 2002 work accident.

Rather, he pointed to other "psychosocial stressors" that were substantially contributing to Frans' "level of distress and resulting diagnoses." The other stressors noted by Arias included a family member's suicide, a grandchild born with a defect, and the recent death of Frans' mother. Arias did not diagnose Frans with major depressive disorder.

On May 3, 2019, the compensation court entered an award, finding that Frans was entitled to ongoing future medical care as detailed in its opinion. In addressing the extent of Frans' entitlement to future medical care for his low back, head and neck, and psychological conditions, the court referenced its summary judgment order finding that to recover future medical care for his head and neck, Frans would need to show that those injuries were causally related to his low-back injury. Similarly, the court stated that the Appellants would be obligated to pay for the medical treatment of Frans' depression and anxiety only if those conditions were caused by his low-back injury. The court examined the evidence relating to treatment Frans sought for his neck, head, depression/anxiety, and low back. The court found that the Appellants were not liable for treatment of Frans' head and neck as he had not presented sufficient evidence establishing a causal relationship between those injuries/conditions and his low-back injury. With respect to Frans' low back, the court found that Frans had shown certain treatments were "reasonable and necessary medical treatment caused by the accident" and ordered the Appellants to pay for the specified treatments. The court addressed Frans' request that the Appellants pay for certain medical bills incurred for past medical treatment, but it found that the Appellants were not liable for any of the bills at issue.

With respect to the treatment Frans sought for his depression and anxiety, the compensation court reviewed the history of Frans' treatment and the various medical opinions in evidence relating to the causation of these conditions. The court considered the Appellants' arguments contesting their liability for the medical treatment of Frans' depression and anxiety, including their argument that Frans was suffering from those conditions at the time of the settlement agreement and that such conditions were excluded by the terms of the settlement agreement. The court found that a reasonable reading of the settlement agreement "holds that if the depression and anxiety stem from [Frans'] low back injury, then the [Appellants remain] liable for that medical treatment." The court also addressed the Appellants' causation arguments. The court found Sattar's opinion insufficient because Sattar never said that Frans' depression and anxiety were caused by his low-back injury, only that they "appear to be dating to the date of injury," which the court found "vague and unconvincing" and "simply unpersuasive." However, the court was persuaded by Gutnik's opinion, which the court also found to be more persuasive than Arias' opinion. We discuss the court's specific analysis of Gutnik's opinion in the argument section below. The court found that the Appellants were liable for Frans' ongoing medical treatment for his depression and anxiety to include the medications Prozac, trazodone, Topamax, and clonidine and treatment with a psychotherapist.

ASSIGNMENTS OF ERROR

The Appellants assert that the compensation court erred in (1) failing to find that Frans was precluded from seeking benefits beyond those agreed to by the parties pursuant to the order approving the 2008 settlement agreement and dismissing Frans' 2008 petition and (2) finding that

Frans had presented legally sufficient evidence to meet his burden of proof that he was entitled to medical treatment for depression and anxiety.

STANDARD OF REVIEW

A judgment, order, or award of the compensation court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the judgment, order, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Martinez v. CMR Constr. & Roofing of Texas*, 302 Neb. 618, 924 N.W.2d 326 (2019). When testing the sufficiency of the evidence to support findings of fact made by the Workers' Compensation Court trial judge, the evidence must be considered in the light most favorable to the successful party, every controverted fact must be resolved in favor of the successful party, and the successful party will have the benefit of every inference reasonably deducible from the evidence. *Bortolotti v. Universal Terrazzo & Tile Co.*, 304 Neb. 219, 933 N.W.2d 851 (2019). On appellate review, the factual findings made by the trial judge of the Workers' Compensation Court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Id.* An appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law. *Martinez v. CMR Constr. & Roofing of Texas, supra.*

ANALYSIS

*Settlement Agreement.*

The Appellants assert that the compensation court erred in failing to find that Frans was precluded from seeking benefits beyond those agreed to by the parties pursuant to the order approving the 2008 settlement agreement and dismissing Frans' 2008 petition.

Pursuant to Neb. Rev. Stat. § 48-139(2)(c) (Cum. Supp. 2018):

Every such lump-sum settlement approved by order of the compensation court shall be final and conclusive unless procured by fraud. An order approving an application under this subsection shall, in any case in which the employee is represented by counsel and in which the application contains a description of the medical, surgical, or hospital expenses incurred for treatment of the injury that will remain unpaid as part of the settlement which are disputed and for which compensability has been denied by the employer, provide that the employer is not liable for such expenses. Upon paying the amount approved by the compensation court, the employer shall be discharged from further liability on account of the injury or death, other than liability for the payment of future medical, surgical, or hospital expenses if such liability is approved by the compensation court on the application of the parties.

In the lump-sum settlement agreement at issue in this case, the parties agreed that Frans sustained an injury to his lower back in the 2002 accident. The agreement provided for resolution "on a final basis" of all issues except Frans' entitlement "to receive reasonable and necessary medical treatment as a result of [his] low back condition . . . to be paid by [the Appellants] pursuant

to . . . § 48-120." The Appellants argue that the settlement agreement, by discharging their liability for all injuries arising out of the October 2002 accident except for the low-back injury, excluded any mental injury Frans might have suffered. They argue further that by not enforcing the plain language of the settlement agreement, the compensation court effectively made adjustments to it without the requisite showing of fraud.

It is true that there is evidence that Frans developed depression within about a year of the 2002 accident and that he was suffering from both depression and anxiety at the time of the settlement. Clearly, if Frans was seeking disability payments for a mental injury related to the 2002 accident, he would be precluded from doing so under the settlement agreement absent a showing that the lump-sum settlement was procured by fraud. See *Hunt v. Pick's Pack-Hauler*, 23 Neb. App. 278, 869 N.W.2d 723 (2015) (party's allegations of fraud to readjust lump-sum settlement must pertain to procurement of lump-sum settlement itself). The settlement agreement here left open the Appellants' liability for "reasonable and necessary medical treatment as a result of his low back condition." And, in the 2019 amended petition, Frans sought "continuing medical treatment including but not limited to treatment for depression arising as a result of the 10/30/02 back injury as well as other treatment related to the back injury."

An employer is liable only for those reasonable medical expenses incurred as a result of a compensable accident. *Hare v. Watts Trucking Service*, 220 Neb. 403, 370 N.W.2d 143 (1985). See, also, Neb. Rev. Stat. § 48-120 (Cum. Supp. 2018). Expenses not shown by the evidence to have been incurred as a result of a compensable accident are not allowable as charges against the employer. *Hare v. Watts Trucking Service, supra*. An award of future medical treatment may include treatment which becomes reasonably necessary only after entry of the award. See, *Sellers v. Reefer Systems*, 283 Neb. 760, 811 N.W.2d 293 (2012); *Pearson v. Archer-Daniels-Midland Milling Co.*, 282 Neb. 400, 803 N.W.2d 489 (2011). The question becomes whether the requested treatment is necessary to treat the employee's work-related injuries. See *Rodriguez v. Hirschbach Motor Lines*, 270 Neb. 757, 707 N.W.2d 232 (2005). If the necessity of the treatment has been established, it may be compensable notwithstanding the fact that it was not specifically included in the award of future medical benefits. See *Sellers v. Reefer Systems, supra*. See, also, *Moss v. C&A Indus.*, 25 Neb. App. 877, 915 N.W.2d 615 (2018) (remanding to address employee's request to compel payment of expenses for knee replacement where court had not considered whether knee replacement was due to employee's compensable injuries and previous further award provided for future medical treatment).

Here, the compensation court did not err in determining that the Appellants would be liable for medical treatment of Frans' depression and anxiety if he showed such treatment became reasonably necessary as a result of his low-back injury.

*Depression and Anxiety.*

The Appellants assert that the compensation court erred in finding that Frans had presented legally sufficient evidence to meet his burden of proof that he was entitled to medical treatment for depression and anxiety. The compensation court rejected Sattar's opinion as legally insufficient; instead, relying on Gutnik's opinion to find that Frans established a causal link between his compensable back injury and his depression and anxiety.

- 8 -

Unless an injury's nature and effect are plainly apparent, a workers' compensation claimant must establish the causal relationship between the employment and the injury or disability by expert opinion. *Damme v. Pike Enters.*, 289 Neb. 620, 856 N.W.2d 422 (2014). Although a claimant's medical expert does not have to couch his or her opinion in the magic words "reasonable medical certainty" or "reasonable probability," the opinion must be sufficient to establish the crucial causal link between the claimant's injuries and the accident occurring in the course and scope of the claimant's employment. *Id.* Expert medical testimony based on "could," "may," or "possibly" lacks the definiteness required to support an award from the Workers' Compensation Court. *Ladd v. Complete Concrete*, 13 Neb. App. 200, 690 N.W.2d 416 (2004). The Workers' Compensation Court is the sole judge of the credibility and weight to be given medical evidence, even when the health care professionals do not give live testimony. *Gardner v. International Paper Destr. & Recycl.*, 291 Neb. 415, 865 N.W.2d 371 (2015).

In its May 2019 award, the compensation court first considered Sattar's opinion that Frans' "problems do appear to be dating to the date of the injury" and agreed with the Appellants that Sattar's opinion was not sufficient to carry Frans' burden of proof and persuasion. The court noted that Sattar never said that Frans' depression and anxiety were caused by his low-back injury, only that they appeared to date to that period of time, which the court found vague and unconvincing. The court acknowledged that an expert's medical opinion does not need to be couched in "magic words," but it was unpersuaded by Sattar's use of the word "appear." See, *Edmonds v. IBP, inc.*, 239 Neb. 899, 479 N.W.2d 754 (1992) (statement in medical report that employee's condition appears to be work related was no different than saying that the work may have precipitated condition); *Fowler v. Lester Electric*, 1 Neb. App. 693, 501 N.W.2d 728 (1993) (opinion of medical expert that claimant's injury appeared to be work related was insufficient as matter of law to prove to reasonable degree of medical certainty causal connection between injury and work-related activity).

At trial, the Appellants challenged Gutnik's opinion, arguing that Gutnik did not have a complete and accurate history of Frans' mental health, that Gutnik's opinion failed to specifically link Frans' depression and anxiety to his back injury, and that Gutnik's opinion linked Frans' depression and anxiety to other causes, leaving the compensation court to speculate about whether his low-back injury caused his depression and anxiety. The court wrote a lengthy analysis of those arguments and the evidence, which we quote:

> The Court agrees Dr. Gutnik was unaware of [Frans'] 2001 and early 2002 diagnoses of anxiety and panic attacks. Those panic attacks were caused by the stress of his job. That stress was obviously eliminated when Frans lost his job in 2005. While the Court would rather Dr. Gutnik have known about the prior history, his lack of knowledge of [Frans'] limited and non-disabling history of anxiety did not overly concern the Court. This is particularly true given [Frans'] testimony that he stopped taking all of his anti-anxiety medications in September 2002, shortly before his work accident. This testimony was borne out by the absence of any medical records showing he continued Paxil and Xanax after September of 2002. The evidence showed that while [Frans] had some difficulties with anxiety in 2001 and 2002, those problems seemed to abate shortly before

his work accident, and the cause of it was eliminated by 2005. Dr. Gutnik's ignorance of those facts did not undermine his ultimate opinion in the view of the Court.

The Court finds that Dr. Gutnik did indeed link [Frans'] anxiety and depression to his low back injury. It is true that Dr. Gutnik did not specify 'low back' when he said [Frans'] psychological problem began with his 2002 injury. However, the low back injury was the most significant injury [Frans] suffered in the accident. Most of his treatment was focused on the low back. It was noted by several doctors that [Frans'] neck and head injuries resolved relatively quickly with treatment. . . . Moreover, the vast majority of the medical records in evidence chronicle [Frans'] ongoing struggles with low back pain immediately after the accident and for the numerous years thereafter. Consequently, when Dr. Gutnik opined [Frans'] psychological conditions started with his work injury, the Court interpreted that to mean his low back injury. That interpretation is supported by the overwhelming evidence (i.e. medical records), many of which Dr. Gutnik himself reviewed.

Finally, while Dr. Gutnik noted other factors that contributed to [Frans'] depression and anxiety, he pointed to [Frans'] pain and 2002 work injury as the starting point. He and Dr. Arias agreed that [Frans'] anxiety was probably aggravated by other stressors such as the loss of his job, his mother's passing, the death of his dog, litigation stress, workers' compensation issues and other family stressors. The reality is depression and anxiety are rarely caused by one thing and many unpleasant events can aggravate those conditions. Dr. Gutnik opined [Frans'] depression and anxiety started with his injury. The chronic pain and disability from that back injury led [Frans] to lose his job. Dr. Gutnik's opinion, while citing other contributing factors to [Frans'] depression and anxiety, was clear enough and sufficient enough to carry [Frans'] burden of proof. . . .

The Court was persuaded by the opinion of Dr. Gutnik and the testimony of [Frans] and his wife that [Frans'] depression and anxiety were caused by his low back injury. [Frans'] low back has troubled and disabled [him] since the accident. It caused him to lose his job. [Frans] has not returned to work. While there were some improvements in his low back pain, it continues to bother him today. Notably, [Frans] was not depressed prior to the accident. He testified as much, and the medical records support that testimony. . . . [Frans] appeared depressed while testifying, and his wife's testimony buttressed the Court's own observations. The preponderance of the evidence led the Court to conclude [Frans'] anxiety and depression were caused by [his] low back injury. As a result, [the Appellants] are liable for his medical treatment for the same.

On appeal, the Appellants argue that Gutnik's opinion carries the same flaw as Sattar's in that it does not link Frans' low-back condition and his depression and anxiety. They argue that Gutnik's generic references to the "2002 injury" are insufficient to show that Gutnik was opining that the depression and anxiety were specifically caused by Frans' low-back injury, as opposed to having been caused by the alleged head and/or neck injury, especially given that the medical records reviewed by Gutnik showed some treatment to Frans' head and neck following the 2002 accident. They argue that the court, by interpreting the medical records to show that the low back

was the most significant injury necessitating the most treatment, went beyond Gutnik's report and engaged in impermissible legal speculation.

In a workers' compensation case, the medical history contained in medical records does not establish causation; however, the meaning of the words in a medical record can be interpreted in their larger context and not read literally. See *Lounnaphanh v. Monfort, Inc.*, 7 Neb. App. 452, 583 N.W.2d 783 (1998). The sufficiency of an expert's opinion is judged in the context of the expert's entire statement. *Bernhardt v. County of Scotts Bluff*, 240 Neb. 423, 482 N.W.2d 262 (1992); *Zitterkopf v. Aulick Indus.*, 16 Neb. App. 829, 753 N.W.2d 370 (2008). The value of an expert's opinion is no stronger than the facts upon which it is based. *Watson v. Alpo Pet Foods*, 3 Neb. App. 612, 529 N.W.2d 139 (1995). See, also, *Hintz v. Farmers Co-op Assn.*, 297 Neb. 903, 902 N.W.2d 131 (2017). An appellate court examines the sufficiency of a medical expert's statements from the expert's entire opinion and the record as a whole. *Damme v. Pike Enters.*, 289 Neb. 620, 856 N.W.2d 422 (2014). See *Frank v. A & L Insulation*, 256 Neb. 898, 594 N.W.2d 586 (1999) (physician's statement sufficient to establish medical causation when examined in larger context of physician's entire opinion and record as whole).

Having reviewed and considered Gutnik's entire opinion in the light most favorable to Frans, we are unable to find that Gutnik's opinion was sufficient to establish the requisite causation--that treatment for Frans' depression became reasonably necessary as a result of his low-back injury. First, Gutnik states that Frans "appears to have been suffering from Major Depressive Disorder and Generalized Anxiety Disorder [the diagnoses given above] for a number of years." Gutnik indicates that the depression and anxiety date back to the injury of 2002 and to his termination in 2005. Gutnik further opines that Frans' current psychiatric conditions "began with his 2002 injury and . . . were aggravated by his termination in 2005." These are dates that precede the settlement agreement which waived liability for mental health claims. Similar to Sattar's opinion, which was rejected by the compensation court, Gutnik only ties the depression and anxiety to the date of the accident (and later termination). At no time does Gutnik state that Frans' current psychiatric conditions have developed as a result of the low-back injury.

The compensation court erred in finding that Frans presented sufficient expert evidence to show that his current psychiatric conditions were a result of his low-back injury. Rather, the record as a whole shows that Frans has had ongoing depression and anxiety since the 2002 accident, and he is precluded from recovering from these conditions by the settlement agreement and order approving it.

## CONCLUSION

The compensation court did not err in determining that the Appellants would be liable for medical treatment of Frans' depression and anxiety if he showed such treatment became reasonably necessary as a result of his low-back injury. However, the court erred in finding sufficient medical causation to show that Frans' current psychiatric condition developed as a result of his low-back injury. Accordingly, we reverse the decision of the compensation court and remand with directions to dismiss Frans' amended petition.

REVERSED AND REMANDED WITH DIRECTIONS.