IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

MAY V. FLANDERS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

RICHARD MAY, APPELLEE,

V.

FLANDERS PROVISION CO., LLC, APPELLEE,

AND

WALMART, INC., APPELLANT.

Filed November 14, 2023.    No. A-23-021.

Appeal from the Workers' Compensation Court: THOMAS E. STINE, Judge. Affirmed.

Jennifer Caswell and Jenna M. Christensen, of Caswell, Panko & Westerhold, L.L.C., for appellant.

Sarah N. Boston, of McAnany, Van Cleave & Phillips, P.A., for appellee Flanders Provision Co., L.L.C.

Jon Rehm, of Rehm, Moore & Rehm, P.C., L.L.O., for appellee Richard May.

BISHOP, ARTERBURN, and WELCH, Judges.

WELCH, Judge.

### INTRODUCTION

Walmart, Inc., appeals from the order of the Nebraska Workers' Compensation Court finding that, in 2020, Richard May sustained a recurrence of a 2018 work-related injury during the course of his employment with a new employer, Flanders Provision Co., LLC (Flanders), and that his previous employer, Walmart, was responsible for payment of May's past and future medical expenses. For the reasons stated herein, we affirm.

- 1 -

## STATEMENT OF FACTS

On September 7, 2021, May filed a petition in the Nebraska Workers' Compensation Court against Flanders and Walmart alleging that, on May 1, 2020, he sustained an injury to his right arm arising out of, and in the course of, his employment with Flanders. He further alleged that Flanders denied responsibility for the claim based upon Flanders attributing May's current injury to a 2018 work-related injury during his previous employment with Walmart. Following that 2018 injury, Walmart and May entered into a stipulated agreement wherein Walmart agreed to pay for future medical expenses which were "reasonable, necessary, and related to the accident of April 15, 2018." May alleged that neither Flanders nor Walmart had paid expenses or benefits related to his 2020 workers' compensation claim and May requested that the Workers' Compensation Court determine the benefits to which he was entitled and determine which employer was responsible for paying those benefits.

Trial on May's petition was held in November 2022. The court heard testimony from May and received into evidence 30 exhibits including May's medical records spanning a period of nearly 10 years. May testified that he originally injured his right elbow in 2011 while working for Bubba Burgers, a sister company of Flanders. As a result of that injury, May was seen by Dr. Brent Hood who diagnosed and treated May for right lateral epicondylitis and carpal tunnel syndrome. After non-surgical interventions were unsuccessful in treating May's pain, Dr. Hood performed surgery on May's right elbow and wrist in 2017.

The year after his surgery, on April 18, 2018, May felt a pop in his elbow while moving boxes at Walmart, where he began working in 2015. He again sought treatment from Dr. Hood who diagnosed May with a wrist sprain and a right subsequent encounter of lateral epicondylitis of the right elbow. Several months later, Dr. Hood referred May to Dr. Paul Nielsen, who performed a second surgery on May's right elbow in December 2018. After this surgery, May continued his employment with Walmart working light duty. May was released by Dr. Nielsen in April 2019 and May stated that he was not having any issues with his right elbow at that time. Later that year, in October, May terminated his position with Walmart.

In November 2019, May began working for Flanders. At the time he began this employment, May stated that he was not having pain in his right elbow and he had ceased taking any pain medication. May testified that his job duties at Flanders involved repetitive heavy lifting and after about 2 or 3 months, he began noticing a gradual increase in symptoms in his right elbow. May stated that the symptoms differed from the symptoms he experienced after his injury at Walmart. May stated that he did not feel a pop like he had previously, but that the pain was 10 times worse than what it was when he left Walmart, and his symptoms included tingling in his fingers all the way to his neck and down to his right foot.

After speaking with safety personnel at Flanders, May consulted Bryan Mizner, a physician assistant at Twin Rivers, in February 2021. In his medical report, Mizner noted that May reported a history of pain in his elbow and forearm for the last 8 months due to lifting heavy objects at work. Mizner indicated that it was likely tendonitis due to repetitive lifting at work, placed him on a 5-pound lifting restriction, and suggested that May return to Dr. Hood.

In April 2022, May saw a nurse practitioner whose report noted that "[t]he incident occurred more than 1 week ago" and that "there was no injury mechanism." The report also noted that May had lifting restrictions and restrictions limiting his repetitive motions. The nurse practitioner provided May with an additional work restriction that he was not to work in prolonged cold areas for more than 2 hours.

At Flanders' request, Dr. Ian D. Crabb performed an independent medical evaluation of May on June 14, 2022. Dr. Crabb's report stated that he found "no actual work-related injury" and that May might "be experiencing some discomfort due to his preexisting surgical condition, but he has not suffered any new injury either to his elbow or to any other identified body part per the medical record or my evaluation today." Dr. Crabb opined that May could "return to work full duty without restrictions" and that he had reached maximum medical improvement (MMI) as of the date of the evaluation. His report concluded that "I do not detect any aggravation of his preexisting right elbow condition. Given his previous surgery, it is certainly possible he will have episodes of discomfort, but this is a natural consequence of his preexisting right elbow condition."

The following month, in July 2022, May returned to Dr. Hood. The report for that visit indicated that May stated that the onset of symptoms began in December 2020, that the symptoms were caused by "[l]ifting greater than 50 lbs. routinely and repetitive work." Dr. Hood's report indicated that May's condition was "basically an overuse injury of the elbow" which some people referred to as "tennis elbow." Dr. Hood placed May on restrictions, advised May regarding the topics of radicular pain from his neck and his "re-occurring lateral epicondylitis," and ordered nerve tests which were never completed.

On December 8, 2022, the court entered its order finding, as relevant to this appeal, that: (1) May did not prove that he sustained any injury while employed by Flanders on May 1, 2020; (2) May sustained a recurrence of his prior work-related injury from April 2018 with Walmart; and (3) Walmart was responsible for payment of May's medical expenses. Walmart now appeals from the court's order.

## ASSIGNMENTS OF ERROR

Walmart assigns that the Workers' Compensation Court erred in (1) finding that May met his burden to prove that his current condition is a recurrence of his 2018 injury because there is no legally sufficient medical opinion in the record supporting that conclusion; (2) finding that May's current injuries were a recurrence of his 2018 work-related accident at Walmart; and (3) ordering Walmart to pay May's past medical expenses.

## STANDARD OF REVIEW

Under Neb. Rev. Stat. § 48-185 (Reissue 2021), the judgment made by the compensation court shall have the same force and effect as a jury verdict in a civil case and may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Bower v. Eaton Corp.*, 301 Neb. 311, 918 N.W.2d 249 (2018).

An appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law. *Id.*

Determinations by a trial judge of the Workers' Compensation Court will not be disturbed on appeal unless they are contrary to law or depend on findings of fact that are clearly wrong in light of the evidence. *Id.*

Findings of fact made by the Workers' Compensation Court have the same force and effect as a jury verdict and will not be set aside unless clearly erroneous. *Hintz v. Farmers Co-op Assn.*, 297 Neb. 903, 902 N.W.2d 131 (2017). When testing the sufficiency of the evidence to support findings of fact made by the Workers' Compensation Court trial judge, the evidence must be considered in the light most favorable to the successful party and the successful party will have the benefit of every inference reasonably deducible from the evidence. *Id.*

Appellate courts independently review questions of law decided by a lower court. *Damme v. Pike Enters.*, 289 Neb. 620, 856 N.W.2d 422 (2014).

ANALYSIS

EXPERT OPINION ON CAUSATION

Walmart first assigns and argues that the Workers' Compensation Court erred as a matter of law in finding that there was a legally sufficient medical opinion to support the court's conclusion that the cause of May's pain complaints after the 2020 incident was a recurrence of his prior compensable injury.

In *Hintz v. Farmers Co-op. Assn.*, 297 Neb. 903, 902 N.W.2d 131 (2017), the Nebraska Supreme Court stated:

> In order to recover under the Nebraska Workers' Compensation Act, a claimant has the burden of proving by a preponderance of the evidence that an accident or occupational disease arising out of and occurring in the course of employment proximately caused an injury which resulted in disability compensable under the act.
>
> If the nature and effect of a claimant's injury are not plainly apparent, then the claimant must provide expert medical testimony showing a causal connection between the injury and the claimed disability.

The Nebraska Supreme Court has also stated that when the subject matter is wholly scientific or so far removed from the usual and ordinary experience of the average man that expert knowledge is essential to the formation of an intelligent opinion, only an expert can competently give opinion evidence as to the cause of the physical condition. *Hintz v. Farmers Co-op Assn., supra.*

Here, we agree that the subjective nature of May's pain complaints following the 2020 incident required an expert opinion to establish causation. See *Jacob v. Columbia Ins. Group*, 2 Neb. App. 473, 511 N.W.2d 211 (1994). The issue raised by Walmart requires us to determine whether a legally sufficient opinion on causation was offered at trial.

In finding that the medical records were sufficient to establish an expert opinion on causation, the Workers' Compensation Court stated:

- 4 -

Walmart complains that [May] did not provide a specific causation report from a medical expert specifically opining that [May's] current condition of his right upper extremity is a recurrence of the previous injury. The sufficiency of an expert's opinion is judged in the context of the entire statement as it relates to the totality of evidence in the case. *Paulsen v. State*, 249 Neb. 112, 541 N.W.2d 636 (1996). The fact finder may or may not find that in this "larger context," the doctor's conclusions on causation were given to a reasonable degree of medical probability or certainty. *Miner v. Robertson Home Furnishing*, 239 Neb. 525, 476 N.W.2d 854 (1991). In a workers' compensation case, the medical history contained in the medical records does not establish causation. *Lounnaphanh v. Monfort, Inc.*, 7 Neb. App. 452, 583 N.W.2d 783 (1998). A note in a doctor's record, alone, can, if otherwise sufficient, support a finding of causation. *Id.* The meaning of the words in a medical record can be interpreted in their larger context and not read literally. *Id.* For a medical record to support a finding of causation, it is necessary that the medical record "be interpreted to mean that the doctor opined, with a reasonable degree of medical certainty," that the particular alleged work event caused the injury. *Id.* at 466, 583 N.W.2d at 791. An expert's opinion must be examined in the context of the expert's entire testimony. See *Renne v. Moser*, 241 Neb. 623, 490 N.W.2d 193 (1992).

The medical notations of Catlett, Nielsen, Hood, Mary Lanning Health Care, and Crabb are sufficient to support a finding that the medical providers believe that [May's] current right upper extremity condition is related to his previous 2018 injury and not a new accident, injury, or aggravation while working at Flanders. . . . Hood, Mary Lanning Health Care, and Crabb define [May's] current condition as a recurrence of his lateral epicondylitis. Hood requires additional diagnostic testing to confirm his diagnosis, and the Court believes that testing is reasonable and necessary and related to [May's] April 2018 work injury.

For all these reasons, the Court finds that [May's] current right upper extremity medical condition is a recurrence of the injury [May] sustained in April 2018 while working for Walmart, and that Walmart is responsible for payment of [May's] medical expenses and future medical care to determine an appropriate medical treatment regimen for [May's] ongoing problems.

We agree with the Workers' Compensation Court that the medical records, when read in "their larger context," were legally sufficient to make a finding of causation in this case.

Determination of causation is, ordinarily, a matter for the trier of fact. *Potter v. McCulla*, 288 Neb. 741, 851 N.W.2d 94 (2014). However, whether the specific language used in a medical opinion is sufficient to establish causation is a question of law. See *Halbert v. Champion International*, 215 Neb. 200, 337 N.W.2d 764 (1983) (testimony that accident "could have" caused injury was insufficient as matter of law to carry employee's burden).

In a worker's compensation case, the medical history contained in medical records does not establish causation; however, the meaning of the words in a medical record can be interpreted in their larger context and not read literally. See *Lounnaphanh v. Monfort, Inc.*, 7 Neb. App. 452, 583 N.W.2d 783 (1998). The sufficiency of an expert's opinion is judged in the context of the

expert's entire statement. *Bernhardt v. County of Scotts Bluff*, 240 Neb. 423, 482 N.W.2d 262 (1992); *Zitterkopf v. Aulick Indus.*, 16 Neb. App. 829, 753 N.W.2d 370 (2008). The value of an expert's opinion is no stronger than the facts upon which it is based. *Bernhardt v. County of Scotts Bluff, supra*. See, also, *Hintz v. Farmers Co-op Assn.*, 297 Neb. 903, 902 N.W.2d 131 (2017). An appellate court examines the sufficiency of a medical expert's statements from the expert's entire opinion and the record as a whole. *Damme v. Pike Enters.*, 289 Neb. 620, 856 N.W.2d 422 (2014).

In this case, the record contains medical documentation related to May's condition spanning over a 10-year period of time including, but not limited to, various doctors' assessments following the 2020 injury. In a report authored by Dr. Crabb following the June 14, 2022, independent medical evaluation, he opined that "I do not detect any aggravation of his preexisting right elbow condition. Given his previous surgery, it is certainly possible he will have episodes of discomfort but this is a natural consequence of his preexisting right elbow condition." Following pain complaints to Flanders, in April 2022, May was seen by a physician assistant at which time he was diagnosed with arm pain. The progress note indicated that "the incident occurred more than 1 week ago. There was no injury mechanism," that May's arm pain "is a chronic problem," and that May was "seeing orthopedics and managing pain symptomatically." On July 14, May was seen by Dr. Hood for a follow-up wherein Dr. Hood assessed May as having "right elbow pain, numbness and tingling of the right upper extremity, and right lateral epicondylitis." Dr. Hood indicated that he had counseled May that "this condition is basically an overuse injury of the elbow" and that "any job that requires repetitive use of the forearm may lead to this condition." Additionally, Dr. Hood stated that he educated May on "radicular pain from his neck, and his re-occurring lateral epicondylitis." Following the visit, Dr. Hood placed an order for an electromyogram to rule out other potential causes of elbow pain such as a pinched nerve.

Although a claimant's medical expert does not have to couch his or her opinion in the magic words "reasonable medical certainty" or "reasonable probability," the opinion must be sufficient to establish the crucial causal link between the claimant's injuries and the accident occurring in the course and scope of the claimant's employment. *Damme v. Pike Enters.* 289 Neb. 620, 856 N.W.2d 422 (2014).

After reviewing the entirety of this record, it is clear that May suffered from a preexisting compensable right elbow injury for which Walmart had previously stipulated that it would pay for future medical expenses which were "reasonable, necessary, and related to the accident of April 15, 2018." Following the 2020 incident in which May reported having pain, the question became whether May suffered a new injury, aggravated the old one, or was experiencing a recurrence of the preexisting injury. After reviewing the medical records provided in the entire context, we read the doctors' notes and records as indicating a collective belief that May's pain complaints, more likely than not, were a result of a recurrence of May's preexisting right lateral epicondylitis condition as opposed to a new injury or an aggravation of an old one.

In so ruling, we are persuaded that the language used by Dr. Crabb and Dr. Hood expressed an opinion that this pain condition was a natural consequence of the condition which would recur from time to time with use of that arm and, more likely than not, explained the reason for his current pain complaints. Walmart separately argues that these medical records are not specific enough to link May's pain complaints to the 2018 injury for which it agreed to retain responsibility.

We find that when read in context, the medical records were sufficient to link May's symptoms to the condition for which Walmart retained responsibility. To that end, Walmart argues that May first developed this condition in 2011, had surgery in 2017, and then aggravated the condition in 2018 requiring a separate surgery. Walmart argues that, although it agreed to retain responsibility for future medical treatment arising out of the condition which had occurred in 2018, the medical opinions fail to differentiate May's current pain complaints as relating to the 2018 condition as opposed to that first injury in 2011. We decline to support that distinction.

As Walmart's counsel acknowledged during oral argument, May suffered from the same condition first arising in 2011 and then aggravated in 2018, both requiring surgeries. It is that same condition that the doctors opined is likely causing ongoing pain complaints with May's use of that arm. Because the doctors' opinions were sufficient to link May's arm pain to the very condition for which Walmart agreed to retain responsibility, we find no error in the Workers' Compensation Court's determination. Accordingly, we find that the court did not err in concluding there was a legally sufficient expert opinion governing causation offered at trial. This assignment of error fails.

FINDING OF RECURRENCE OF INJURY

Walmart next argues that the Worker's Compensation Court erred in determining that May's 2020 injury was a recurrence of the 2018 injury he sustained while employed with Walmart. Instead, Walmart asserts that the court should have found that it was a new injury or an aggravation of a prior injury.

Where there have been two accidents to an employee, the question of whether the disability sustained by him should be attributed to the first accident or to the second accident depends on whether or not the disability sustained was caused by a recurrence of the original injury or by an independent intervening cause. *Mendoza v. Omaha Meat Processors*, 225 Neb. 771, 408 N.W.2d 280 (1987). If the second injury is but a recurrence of the original injury, compensation therefore must be paid by the employer and insurance carrier at the time of the first injury. *Id.* When a subsequent injury aggravates a prior injury, the insurer at risk at the time of the subsequent injury is liable. *Weyerman v. Freeman Expositions*, 26 Neb. App. 692, 922 N.W.2d 246 (2018).

In *Mendoza v. Omaha Meat Processors*, 225 Neb. at 782, 408 N.W.2d at 287, the Nebraska Supreme Court delineated the difference between a recurrence and an aggravation:

There is . . . a fine line separating aggravations from recurrences . . . .

In order to find that there has been an aggravation, it must be shown that the second episode contributed independently to the final disability. Also, there must have been a second "injury" as that term is used in the jurisdiction. . . .

If the second injury takes the form merely of a recurrence of the first, and if the second incident does not contribute even slightly to the causation of the disabling condition, the insurer on the risk at the time of the original injury remains liable for the second. . . . This group . . . includes the kind of case in which a worker has suffered a back strain, followed by a period of work with continuing symptoms indicating that the original condition persists, and culminating in a second period of disability precipitated by some lift or exertion.

Where the record presents nothing more than conflicting medical testimony, this court will not substitute its judgment for that of the Workers' Compensation Court. *Fentress v. Westin, Inc.*, 304 Neb. 619, 935 N.W.2d 911 (2019).

Here, Walmart argues that the evidence did not support the finding that the injury was a recurrence. Walmart asserts that neither May's doctors, nor May himself, indicated that his 2020 symptoms amounted to a recurrence of the 2018 injury.

At trial, May testified that when he began his employment with Flanders in November 2019, he was not experiencing pain in his elbow and was not taking any pain medication. Walmart essentially argues that May's pain was resolved by October 2019, and that he remained asymptomatic until he subsequently sought treatment in February 2021 after he had been employed with Flanders for 1 year and 3 months.

Following May's second surgery performed by Dr. Nielsen, he reported having no pain and requested that any restrictions be lifted. On April 9, 2019, Dr. Nielsen opined that May had reached MMI. In June 2019, May reported to Dr. Catlett that he had increasing pain in his elbow after moving produce at work and he wanted to check that he did not hurt anything. After Dr. Catlett reported finding nothing serious, May indicated he wanted to follow up with the orthopedic surgeon.

During a July 2019 appointment with Dr. Nielsen, May reported that his condition was slightly worse after pulling a pallet at work. At that time, Dr. Nielsen informed May that he was likely to have long-term pain related to his preexisting injury and recommended continuing physical therapy. In October 2019, prior to beginning his employment with Flanders, May again saw Dr. Nielsen and reported pain in his elbow and middle finger. He stated that he also had pain that extended from his shoulder down into his arm. Dr. Nielsen stated:

> We will go ahead and try to get an MRI of his neck to rule-out a cervical radiculopathy. As long as that is normal, I will not recommend any further treatment for that. For his middle finger where he has crepitus and triggering, I recommended an injection. He was agreeable to that. An exacerbation of this may be related to his Workman's Compensation claim, but I don't feel that surgical intervention for it would (sic). I will see him back after the cervical spine MRI gets completed.

The MRI was performed on November 8, 2019, 4 days after May began working at Flanders. Following Dr. Nielsen's receipt of the MRI report, on November 18, he released May to return to regular duties.

May did not seek further treatment for his right elbow pain until February 2021, after he reported to Flanders that he was experiencing pain. At the February 2021 appointment, he reported that he had been experiencing pain for the last 8 months as he had been lifting heavy objects at work. He was diagnosed with pain in the right elbow which the doctor stated was likely tendonitis due to repetitive lifting at work. Thereafter, he was seen by a physician assistant at an orthopedic clinic wherein May reported that he sustained an injury in December 2020 or January 2021 after lifting 50 pounds repetitively at work. At that time, he was diagnosed with numbness and tingling of the right upper extremity, possible cubital tunnel syndrome, or a central nervous system issue. May also returned to Dr. Hood three times in April, June, and July 2022 wherein it was reported

that May's symptom onset began in December 2020, that he was basically suffering from an overuse injury of the elbow, and that May was educated on radicular pain from the neck and his "re-occurring lateral epicondylitis." During that same time in June 2022, Dr. Crabb performed an independent medical evaluation at Flanders' request. Dr. Crabb indicated that May did not suffer a new injury and that he may have been experiencing discomfort due to his preexisting surgical condition. He found that there was no aggravation of the preexisting right elbow condition and that his pain was a natural consequence of his preexisting right elbow condition.

Based on the record, we recognize that the court was faced with conflicting evidence and opinions as to the cause of May's 2020 symptoms. For example, May's testimony that he was asymptomatic as of October 2019 appears to be inconsistent with medical records in October 2019 which reported that May described pain in his elbow and other regions which led to an MRI being completed in November 2019. That said, the doctors who treated May following his complaints of pain in February 2021 collectively related the pain as a recurrence of the preexisting condition in his elbow for which surgeries had been performed as opposed to a new injury or an aggravation of the prior injury. And as we stated before, these opinions were legally sufficient to establish causation. As the trier of fact, the Workers' Compensation Court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Contreras v. T.O. Haas*, 22 Neb. App. 276, 852 N.W.2d 339 (2014) (Workers' Compensation Court is entitled to accept opinion of one expert over another). When the record in a workers' compensation case presents conflicting medical testimony, an appellate court will not substitute its judgment for that of the compensation court. *Id*.

Applying deference to the court's credibility determination and considering the evidence in the light most favorable to the successful party, we find that the Workers' Compensation Court did not err in finding that May's 2020 pain complaints were a result of a recurrence of the 2018 injury he sustained while employed with Walmart. This assignment of error fails.

PAST MEDICAL EXPENSES

Walmart's final claim is that the Workers' Compensation Court erred in ordering Walmart to pay May's past medical expenses. More specifically, Walmart argues that the evidence did not show that the April 27, 2021, medical bill from Dr. Hood was incurred as a result of the compensable accident and, without a causal connection linking the medical bill to the compensable injury, the charges were not permitted.

In determining whether Walmart was responsible for May's past medical expenses, the Workers' Compensation Court found:

> Exhibit 4 contains two bills, a $126.00, bill incurred with Catlett on June 25, 2019 . . .; and, a $137.00, bill incurred with Hood on April 27, 2021 . . . [Walmart] argues the office visit with Catlett was outside the chain of referral of medical treatment allowed under Neb. Rev. Stat. § 48-120. The Court agrees and finds that Walmart is not responsible for medical expenses incurred with Catlett. The Court carefully reviewed the expenses charged by Hood and finds the same to be fair and reasonable, and causally related to the April 15, 2018, work injury. [Walmart] is ordered to pay the $137.00, medical expenses of Hood found in Exhibit 4, by making payment directly to the supplier of the medical services set

forth therein or by reimbursing anyone who has made any payment to the supplier of the medical services set forth therein, as their interests may appear.

As we stated earlier, the medical evidence offered and received during the trial was sufficient for the Workers' Compensation Court to determine the factual issue of causation. Because we found no clear error in the court's factual findings on causation, we likewise find that the compensation court did not err in ordering Walmart to pay the medical bill incurred on April 27, 2021, following May's visit with Dr. Hood or in finding that the expenses incurred were causally related to the April 15, 2018, injury May sustained while he was employed with Walmart.

CONCLUSION

Having considered and rejected Walmart's assigned errors, we affirm the decision of the Workers' Compensation Court.

AFFIRMED.